UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-CV-10950-IT

_____
                                          )
TRAILBLAZHERS RUN CO.,                    )
ABEO POWDER,                              )
ELIZABETH ROCK,                           )
and FRANCES RAMIREZ,                      )
Plaintiffs,                               )
                                          )
v.                                        )
                                          )
BOSTON ATHLETIC ASSOCIATION,              )
CITY OF NEWTON,                           )
and JOHN F. CARMICHAEL JR. Chief          )
of Police for the Newton Police           )
Department, in his official capacity,     )
          Defendants                      )
_____)

## DEFENDANTS CITY OF NEWTON AND CHIEF JOHN F. CARMICHAEL JR.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

The Plaintiffs, TrailblazHers Run Co, Abeo Powder, Elizabeth Rock, and Frances Ramirez, ("Plaintiffs") have brought this action against the Boston Athletic Association ("BAA"), City of Newton ("City") and John F. Carmichael, Jr., Chief of Police for the Newton Police Department, in his official capacity ("Chief Carmichael") alleging that they were discriminated against while they were watching the Boston Marathon in Newton on April 17, 2023. (Complaint). The City of Newton and Chief Carmichael ("Municipal Defendants") move to dismiss this suit. None of Plaintiffs' claims survive a motion to dismiss. Plaintiffs' equal protection claim (Count I) fails to allege sufficient facts to state a claim for relief against the municipal defendants. Plaintiffs' civil rights conspiracy claim (Count II) fails to plausibly allege the existence of any such conspiracy,

and therefore fails to sufficiently plead any of the necessary elements.  Plaintiffs have also failed to state a claim and have failed to exhaust required administrative remedies on their public accommodations' claim (Count III).  In addition, all counts against Chief Carmichael should be dismissed.  Chief Carmichael has been sued in his official capacity and claims against him in his official capacity are the same as claims against the City under law.

Accordingly, the Complaint in its entirety should be dismissed, with prejudice.

## STANDARD OF REVIEW

In determining whether to grant a 12(b)(6) motion to dismiss, the Court must consider whether there is sufficient factual matter in the complaint to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court should rely on its "judicial experience and common sense" and disregard bald factual allegations and unsupported conclusions that are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft at 678.  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  Applying this pleading standard to the facts alleged in the Complaint establishes that the Plaintiffs have failed to state a claim against the Municipal Defendants.

## ARGUMENT

### I.  Plaintiffs' Equal Protection Claim (Count I) Should Be Dismissed.

#### A.  Plaintiffs have failed to state a claim for Equal Protection.

Plaintiffs' first cause of action is a claim that the municipal defendants have violated the Plaintiffs' Fourteenth Amendment rights to equal protection under the law.  To bring an Equal

Protection claim, a plaintiff must allege facts that he or she was, compared to others similarly situated, selectively treated; and that this selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 909-910 (1st Cir.1995) quoting Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir.1989); Fincher v. Town of Brookline, 26 F.4d 479 (2022).  Plaintiffs have failed to plead sufficient facts to support either of these necessary elements.

As alleged in the Complaint, during the 2023 Boston Marathon, a group of more than 100 spectators had gathered and were impeding the course at Heartbreak Hill in Newton.  The Newton Police Department received and responded to multiple calls from the BAA regarding these spectators. (Complaint, ¶ 23, 42, footnote 13).[1]  In response to these calls, spectators were instructed by police officers to move back and not run on the course or obstruct runners. (Complaint, ¶¶ 26-27).  Approximately twenty Newton police officers with bicycles formed a line along the boundary of the marathon's course, which Plaintiffs allege physically separated them from runners. (Complaint, ¶ 34).  Plaintiffs allege that the Municipal Defendants unjustly subjected and targeted them to this treatment because of their race. (Complaint, ¶ 21).

This claim fails at the starting gate because there are no factual allegations that the Plaintiffs' running group was treated differently from other similarly situated groups. The standard for determining whether individuals are similarly situated "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly

---

[1] The Court may rely on facts articulated in the newspaper articles cited by the Plaintiffs in their Complaint.  Haley v. City of Boston, 657 F. 3d 39, 46 (1st Cir. 2011); MIT Fed. Credit Union v Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020).

situated." <u>Pollard v. Georgetown School District</u>, 132 F. Supp. 3d 208, 223 (2015); <u>Barrington Cove Ltd. P'ship v RI Hous & Morg. Fin. Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001); <u>Lattimore v. Trotman</u>, 651 F. Supp. 3d 366, 374 (2023).

While Plaintiffs cite three examples of individuals who were allegedly treated differently, none of these examples are of roughly equivalent situations.  Plaintiffs state that around Mile 15, in Wellesley, a Wellesley family hosted a block party with a balloon arch placed within the course for runners to pass through. (Complaint, ¶ 29).  This did not involve similarly situated individuals; Mile 15 is in Wellesley, not Newton and a balloon arch that runners can pass through is very different from spectators running onto the course.  There is no allegation that the Newton Police Department has any jurisdiction over actions taken along the course in Wellesley or in any other municipalities.  The second example offered by the Plaintiffs is of a single spectator offering a doughnut to runners, and then running alongside the individual man who accepted it. (Complaint, ¶ 30).  This involved a single individual that ran alongside an individual runner who accepted the doughnut thereby consenting to the spectator's action.  Plaintiffs assert no facts as to where this example occurred on the course.  There is no allegation that the Newton Police Department has any jurisdiction over this individual or this area of the course.  Moreover, this is also very different from a group of over 100 people. (Complaint, ¶ 23).  Finally, the Plaintiffs cite a woman and her child, who appeared to be loved ones of a runner, who they saw cross into the course to hug a marathon participant. (Complaint, ¶ 31).  This also involved one or two people approaching a single willing runner.  It is very different from the group of over 100 people gathered together repeatedly entering the course and obstructing runners at Mile 21. (Complaint, ¶ 23).[2]  As Plaintiffs

---

[2] Plaintiffs' claims concern how the Trailblazers as a group of 100 spectators at Mile 21 of the marathon course were treated.  There are no allegations in the Complaint stating any facts concerning the individually named Plaintiffs, Abeo Powder, Elizabeth Rock and Frances Ramirez and any actions taken by Newton police officers towards them as

have not alleged any other instances of a similarly situated large group of people impeding the course and runners on multiple occasions that resulted in multiple calls to law enforcement, they have failed to sufficiently establish that there were similarly situated groups present on Marathon Day 2023 who were located within Newton's jurisdictional boundaries who were treated differently by the City.

Even if Plaintiffs had alleged facts about a similarly situated group, the equal protection claim still fails because Plaintiffs have failed to state any specific facts that allege that they were selectively targeted because of their race.  In fact, Plaintiffs admit that it is important not to impede the path of race participants and that their members were occasionally jumping onto the course. (Complaint, ¶ 21, fn. 13).  That is the permissible reason that the Plaintiffs were asked to move back and the reason for the police officers' actions in forming a line of bikes.  Because Plaintiffs have failed to state sufficient facts that they were selectively treated based on their race they have failed to assert a valid claim under Count I.

**B.   A Claim cannot be brought under 42 U.S.C. § 1983 based on Respondeat Superior.**

A municipality will only be held liable under § 1983 "where the municipality *itself* causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original).  A plaintiff stating a claim via 42 U.S.C. § 1983 for violation of the Equal Protection Clause by a municipality must plead that the civil rights violation was caused by a municipal custom, policy, or practice. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978); Los Angeles County, Cal. v. Humphries, 562 U.S. 29, 36 (2010).  A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality

---

individuals. In fact, the Complaint states that they "witnessed crew members becoming upset" which appears to confirm that the named Plaintiffs were not subject to the Police conduct they allege in their complaint.  (Complaint ¶32).

cannot be held liable under § 1983 on a *respondeat superior* theory. Monell at 691.  Thus, the Plaintiffs cannot simply plead that a Newton police officer or police officers violated their rights; that is insufficient to state a claim against the City of Newton.  Furthermore, the custom, practice, or policy must be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.  The plaintiff must show either: (1) the existence of a policy or custom "so persistent and widespread as to practically have the force of law," Connick v. Thompson, 563 U.S. 51, 61 (2011); Monell, 436 U.S. at 691 (informal practice must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law"); or (2) "that a person with final policy making authority caused the supposed constitutional injury." Rodriguez v. Municipality of San Juan, 659 F.3d 168, 181 (1st Cir. 2011). [3]

The Plaintiffs have failed to allege any custom, policy or practice by the municipal defendants that caused a violation of their civil rights.  The Plaintiffs allege that on April 17, 2023, Newton Police "formed a human barricade along the course, physically separating the Plaintiffs and their members from runners, obstructing their view, and preventing them from seeing passing runners in order to cheer them on." (Complaint, ¶ 34).  First, there are no allegations that these actions were pursuant to a policy to treat spectators at the Boston Marathon differently based on their race.  In fact, the facts alleged in the complaint support the proposition that TrailblazHers and other running groups of color have been welcomed at the marathon in Newton without incident for several years.  Specifically, the Complaint states that "[f]or the last four years, TrailblazHers,

---

[3] An official with final policy making authority can subject their municipal employer to § 1983 liability through his or her actions. St. Louis v. Praprotnik, 485 U.S. 112, 123, (1988). Plaintiffs may argue that Chief Carmichael is the final policy maker for the Newton Police Department subjecting the City to liability.  "A [c]ity is liable under Monell for the acts of a final policymaker only if those acts constitute deliberate indifference." Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Baez v. Town of Brookline, Mass., 44 F.4th 79, 83 (1st Cir. 2022) quoting Connick at 131 (2011).  Here, not only does the Complaint fail to allege deliberate indifference by Chief Carmichael, the Complaint contains no allegations of any actions at all by the Police Chief.

along with other running crews of color, have established a 'cheer zone' at Mile 21 on the Boston Marathon route in Newton." (Complaint, ¶ 20).  Further, the Complaint states that "TrailblazHers has for years traditionally gathered at Mile 21 to cheer on their members" (Complaint, ¶ 22) and "[t]he cheer zone in Newton at Mile 21 holds immense significance for Plaintiffs, as it stands as a key place where runners of color are acknowledged and celebrated." (Complaint, ¶ 24).  These statements indicate that the actions alleged concerning the Newton Police Department at the 2023 marathon were, at most, an isolated event in response to BAA complaints that day and not part of a custom policy or practice.  There are no allegations that there was a custom, policy or practice to treat the TrailblazHers spectators differently from other spectators based on their race.

There is an allegation in the Complaint that a NPD officer, Paul Boyle, "fisted the front of the spectator's shirt, demanded identification and threatened an arrest for allegedly running in the course," (Complaint, ¶ 26), but this does not constitute a valid claim against the City of Newton either.  First, this is a single instance of conduct and the Complaint does not allege that it is a custom, policy or practice of the Municipal Defendants.  As aforementioned, a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Monell  at 694.  Second, this allegation does not concern any of the Plaintiffs.  The individual is referred to merely as "a spectator of color."  The individual is not identified as one of the named Plaintiffs or a member of TrailblazHers.  Rule 8(a)(2) requires that *the pleader* state a claim that *he or she* is entitled to relief, and Plaintiffs therefore cannot base a cognizable equal protection claim on this allegation alone. Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 556 U.S. 544, 662 (2009)(emphasis added).

For the reasons stated above, the Plaintiffs' equal protection claim (Count I) fails to allege sufficient facts to state a claim for relief against the municipal defendants and, therefore, must be dismissed.

**II. The Plaintiffs' Civil Rights Conspiracy Claim (Count II) Should Be Dismissed for Failure to Plausibly Establish Any of the Required Elements of a Civil Rights Conspiracy.**

Federal law prohibits two or more persons from conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42. U.S.C. § 1985(3). A claimant under section 1985(3) must establish "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." Griffin v. Breckenridge, 403 U.S. 88, 1002 (1971). To prevail on Count II, Plaintiffs must establish: (1) the existence of a conspiracy; (2) for the purpose of depriving Plaintiffs of equal protection of the laws; (3) at least one act in furtherance of the conspiracy; and (4) deprivation of a constitutionally protected right as a result. 42 U.S.C. § 1985(3); Alston v. Spiegel, 988 F.3d 564, 577 (1st Cir. 2021), quoting Perez Sanchez v. Pub. Bldg. Auth., 531 F. 3d 104, 107 (1st Cir. 2008).

**A. The Plaintiffs' Complaint fails to sufficiently plead facts to establish the first element of a Civil Rights Conspiracy.**

To establish the "existence of a conspiracy," under the first element, a plaintiff must produce either direct evidence of an agreement between parties or plead facts that reasonably suggest such an agreement was made. Parker v. Landry, 935 F.3d 9, 17-18 (1st Cir. 2019). A plaintiff must advance more than "vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement" to adequately plead facts that plausibly suggest a civil rights conspiracy. Alston, 988 F.3d at 577. The factual allegations of the complaint must "plausibly suggest [], (not merely [be]

consistent with)," an agreement between the parties relative to a plaintiff. Twombly, 550 U.S. at 545. Plaintiffs' Complaint fails in this regard.

Plaintiffs do not plead direct evidence that the Municipal Defendants formed an agreement to violate their civil rights. Instead, they ask this Court to infer that such an agreement existed because all of the defendants possibly had some contact prior to the events described in the Complaint. Specifically, in paragraph 50 of their Complaint, Plaintiffs' state the following: "Defendant BAA organizes the Boston Marathon every year. This requires the BAA and the law enforcement agencies in jurisdictions across the 26.2 miles of the course, including the NPD, to jointly and actively collaborate before and during the day of the marathon." Drawing all reasonable inferences in the Plaintiffs' favor based on this sparse allegation, as this Court is required to do on a motion to dismiss, Plaintiffs are alleging that either the calls the BAA allegedly made to the NPD on Marathon Day 2023, or other instances where they "jointly and actively collaborated" before the marathon constitute reasonable evidence that the parties agreed to join a civil rights conspiracy. Neither allegation of "collaboration" is sufficient to plausibly support this conclusion.

The calls the BAA allegedly made to the NPD about Plaintiffs on the day of the marathon cannot constitute evidence of a civil rights conspiracy as a matter of law. Humphrey v. Comoletti, No. 1:15-CV-14170-ADB, 2017 WL 1224539, at *8 (D. Mass. Mar. 31, 2017) (calls to police that result in police response not sufficient to sustain allegations of conspiracy against police defendants); see also Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026, 1049-50 (D. Minn. 2010) (quoting Young v. Harrison, 284 F. 3d 863, 870 (8th Cir. 2002)) ("A private party does not conspire with government actors for purposes of § 1983 merely by 'invoking an exercise of the state official's authority' – for example, by calling the police."). Since these calls cannot constitute

evidence of a conspiracy, Plaintiffs' claim of a civil rights conspiracy can only be based on its faint allegations that the defendants met, in some shape or form, at some undefined point before the marathon.

These vague claims that the defendants likely met before the marathon without allegations about who attended these meetings, when they were held, or what was discussed, do not lend themselves to a plausible conclusion that the Municipal Defendants joined an agreement to infringe upon Plaintiffs' civil rights. See Brown v. Cumberland County, 557 F. Supp. 3d 169 (D. Maine 2021) ("vague allegations and scant specifics" cannot establish existence of conspiracy); Alston, 988 F.3d at 577-78 (complaint must "elaborate or substantiate any bald claims that certain defendants conspired with one another.") (internal punctuation removed).  As is addressed above, Plaintiffs' own Complaint acknowledges that their organization has viewed and celebrated the Boston Marathon from Mile 21 in Newton in years past, without any incidents necessitating police involvement. (Complaint, ¶¶ 20-24).  Particularly given this history of non-involvement, there is no reason to conclude that Plaintiffs were the subject of discussion in any meetings the BAA and NPD may have attended before the 2023 Marathon.  It is a bridge too far to assume merely because the police were called on the Plaintiffs during the 2023 Marathon, the Municipal Defendants earlier formulated and joined a plan to infringe upon their civil rights. Cf Francis-Sobel v. University of Maine, 597 F.3d 15 (1st Cir. 1979) (conspiracy allegations failing to link plaintiffs to defendants did not contain "minimum factual support for the existence of a conspiracy"); Katz v. McVeigh, 931 F. Supp. 2d 311 (D.N.H. 2013) ("Needless to say" communications regarding limited subject matter do not "furnish a plausible basis to find an agreement" among defendants).

The far more plausible conclusion is that the BAA and NPD, if they did meet in advance of the marathon as alleged in Paragraph 50, did so to discuss generalized security needs unrelated

to Plaintiffs.  The Boston Marathon is a famous, highly anticipated, and well-attended event that has been the subject of past acts of terrorism and violence.  The event's vast and complex security needs stretch across multiple cities and towns, and necessarily require collaboration between the BAA and local police departments, including the NPD, before the event itself.  Merely stating that the municipal defendants met with the BAA before the marathon does not establish an "agreement between them even minimally related to [Plaintiffs] (let alone to the deprivation of [their] rights)." Alston, 988 F. 3d at 578; see also Seklecki v. CDC, 635 F. Supp. 3d 15 (2022) (even when potential civil rights violation occurred, "not all parallel conduct . . . suggests an unlawful agreement.").

Plaintiffs are expected to respond that they need access to discovery tools in order to further investigate and validate their claims of a conspiracy.  The suggestion that a party should be given the opportunity to investigate its claims through discovery to shore up unsupported claims "puts the cart before the horse: the plausibility analysis takes into account whether modest discovery may provide the missing link that will allow the [plaintiffs] to go to trial on [their] claims." Parker, 935 F.3d at 18.  As held in Parker, "[t]he assertion of a need for discovery does not trump the plausibility requirement: a plaintiff must state a plausible claim before she can invoke a right to discovery. In other words, a plaintiff can open the door to discovery only if she first alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct." Id. (quoting Twombly, 550 U.S. at 556).  Here, no such reasonable expectation exists. Plaintiffs have not made any factual claims that suggest discovery would be anything other than a fishing expedition. Plaintiffs' civil conspiracy claim is based on pure "speculation," and it fails to set forth facts that suggest that discovery will be anything more than a "shot in the dark." Id.  They cannot "unlock the doors of discovery" on these vague allegations alone. Iqbal, 556 U.S. at 678.

For these reasons, Plaintiffs have failed to allege facts sufficient to plausibly support the first element of a civil rights conspiracy under Count II, and this count must be dismissed.

**B.  Plaintiffs' Complaint fails to establish any of the three remaining elements of a civil rights conspiracy.**

Without sufficient, plausible factual allegations that the defendants formed a conspiracy against the Plaintiffs, Plaintiffs cannot establish any of the other three elements of a civil rights conspiracy. See, e.g., Katz, 931 F.Supp.2d at 439, quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (first element of a civil rights conspiracy is the "principal element").  They cannot, for example, establish that an act was taken in furtherance of an agreement under element three that they have not established existed.  Nor can they establish that the purpose of this purported agreement under element two was to deprive them of their civil rights, or that it did, in fact, accomplish that purpose, failing to meet element four as well.  The Plaintiffs' failure to sufficiently allege a constitutional civil rights violation against the City, as discussed *supra*, section II, is similarly fatal to their ability to establish the fourth element of a civil rights violation.

In addition, Plaintiffs have not sufficiently plead facts to establish that the purpose of this purported conspiracy was racial or otherwise discriminatory animus.  Plaintiffs' Complaint contains a background on the lack of diversity in the sport of running, but this broad history does not give rise to a finding that the City, as a municipal body uninvolved in the running industry, conspired against Plaintiffs with an insidious discriminatory intent.  Plaintiffs otherwise argue that the City's intent must have been discriminatory, given the alleged unequal treatment of Plaintiffs versus white spectators, but as is also discussed *supra*, Plaintiffs failed to identify any truly similarly situated group of white spectators the size and scale of TrailblazHers within Newton's jurisdictional boundaries who were allowed the unfettered access to the marathon courseway of which Plaintiffs claim to have been deprived.  As such, Plaintiffs have failed to plead any facts

sufficient to establish that the purported conspiracy they seek to litigate under Count II was motivated by a discriminatory animus.  Failure to meet one element of this claim would have been fatal to Plaintiffs' claims, failure to meet all four and the discrimination requirement plainly necessitates dismissal.

### III. Plaintiffs' claim for violation of the public accommodations statute should be dismissed.

#### A. Plaintiffs have failed to allege a claim pursuant to the public accommodations statute.

Massachusetts General Laws c. 272 §98 (the Public Accommodation Law) prohibits in relevant part the discrimination or restriction on account of race relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement.  "All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons." G.L. c. 272 §98.  The plaintiffs must plead three elements to establish a *prima facie* case: (1) plaintiffs are members of a protected category under the statute, and (2) plaintiffs were denied access to or restricted in the use of (3) a place of public accommodation.  Bush v. Fantasia, No. 21-CV-11794-ADB, 2022 WL 4134501, at *10 (D. Mass. Sept. 12, 2022).

The first element is not in dispute, as Plaintiffs have pled that they are members of a protected category. (Complaint, ¶ 9, 10-12).  The Complaint contains insufficient facts, however, to establish the second and third element. Plaintiffs allege that the Boston Marathon is a place of public accommodation pursuant to G.L. c. 272 §98. (Complaint ¶ 56).  A place of public accommodation is a place "which is open to and accepts or solicits the patronage of the general public."  G.L. c. 272 § 92A.  "In determining whether a facility qualifies as a place of public

accommodation, the most important factor is selectivity of membership." <u>Concord Rod & Gun Club, Inc. v. Massachusetts Comm'n Against Discrimination</u>, 402 Mass. 716, 721 (1988).  The facts asserted by the Plaintiff actually support a conclusion that the marathon itself is not a place of public accommodation.  The Plaintiffs assert that that the Boston Marathon is notoriously selective and difficult to enter. (Complaint, ¶ 7).  Participation is limited to four avenues: (1) meeting specific time standards based on age and gender; (2) qualifying at a prior marathon with a competitive time; (3) fundraising at least $5,000 for a qualifying non-profit organization; or (4) securing an invitational bid from a marathon sponsor or the BAA.  (Complaint, fn. 6).  To the extent that the Plaintiffs are asserting that they should be permitted to enter the Boston Marathon course itself while the race is going on as it is an alleged public accommodation, the Plaintiffs have failed to state a claim pursuant to G.L. c. 272 § 98.  The course itself is clearly not open to the public.  The course and participation in the marathon is only open to those who meet one of the four criteria described above.

The Plaintiffs further allege that they were denied the same terms and conditions as other spectators at the 2023 Boston Marathon. (Complaint, ¶ 59).  However, they have not demonstrated through their Complaint that they were restricted in their ability to participate as spectators.  For the 2023 Boston Marathon, Plaintiffs organized a cheer zone in Newton at Mile 21 that comprised more than one hundred people. (Complaint, ¶ 23).  Plaintiffs gathered at Mile 21 at 5:30 a.m. on April 17, 2023 and set up tents, including one for a DJ and grills for food.  (Complaint, ¶ 25).  Plaintiffs remained in the cheer zone until the last few runners finished.  (Complaint, ¶ 39).  There is no allegation that the Plaintiffs or any of their fellow spectators were asked to leave or restricted from gathering and cheering on participants along the course.

Plaintiffs allege that their view was obstructed, and they could not see passing runners due to the line of Newton Police officers with bikes. (Complaint, ¶ 34).  As the Complaint acknowledges, the Newton police officers were there in response to calls from the BAA that spectators were impeding the course.  The BAA requires that the course remain clear for runners, (Complaint, fn. 13), and Plaintiffs acknowledge that there is a need to not impede the path of race participants. (Complaint, ¶ 21).  For this reason, there are large sections of the course where there are barricades. (Complaint, fn. 14)  Plaintiffs were able to participate as spectators and gathered, cheered and played music despite the allegations of a public accommodations act violation contained in their Complaint.  The Plaintiffs, like all spectators, were only restricted from obstructing runners.  The "conditions and limitations" placed on the Plaintiffs were plainly "applicable to all persons" based on Plaintiffs' own pleading. G.L. c. 272 §98.  Thus, the Plaintiffs have failed to allege sufficient facts that they were discriminated against in a place of public accommodation.

**B.  <u>Plaintiffs have not complied with the procedures for filing a discrimination action against the Municipal Defendants.</u>**

Regardless of the sufficiency of Plaintiffs factual allegations, this claim must be dismissed for failure to exhaust administrative remedies.  This case involves a claim that the plaintiffs faced discrimination.  As a result, Plaintiffs were required to file their claim with the Massachusetts Commission Against Discrimination ("MCAD") prior to filing suit.  The MCAD has the jurisdiction to administer and effectuate the provisions of the anti- discrimination statutes including G.L. c. 272 §92A and 98.  <u>East Chop Tennis Club v. Massachusetts Commission Against Discrimination</u>, 364 Mass. 444, 446 (1973).  Claims brought pursuant to the public accommodations statute are subject to the nonwaivable requirement that a complaint be filed with MCAD prior to filing a civil suit. <u>Everett v. 357 Corp.</u>, 453 Mass. 585 (2009).  "Section 98 [of the

public accommodations statute] refers to another anti-discrimination statute, chapter 151B, section 5, which in turn refers back to section 98.  This intertextual link amounts to, in the words of the Supreme Judicial Court, 'the integration of [sections 92A and 98] into [chapter] 151B.'" Brooks v. Martha's Vineyard Transit Auth., 433 F. Supp. 3d 65, 72 (D. Mass. 2020) citing Currier v. National Bd. Of Med. Exam'rs, 462 Mass. 1, 18, (201).  The majority of cases support this holding. See Quarterman v. Springfield, 716 F. Supp 2d 67, 77 (D. Mass. 2009); Do Corp. v. Town of Stoughton, No. 13-11726-DJC 2013 WL 6383035 at *14 (Dec. 6, 2013); Griffiths v. Town of Hanover, No. 11-12115-JLT 2012 WL 3637791 at *4 & n. 39 (D. Mass. Aug. 21, 2012; Bush v. Fantasia, No. 21-CV-11794-ADB, 2022 WL 4134501, at *10 (D. Mass. Sept. 12, 2022).[4]

The City acknowledges that a single Massachusetts Superior Court judge has determined that a public accommodations claim does not need to be filed at MCAD prior to filing suit, but that unpublished decision is not binding on this Court. Peters v. Boston Properties, Inc., 2021 WL 349390 (Mass. Super. June 15, 2021).  The present case can also be distinguished from Peters.  In Peters, the Plaintiff had in fact proceeded with the administrative process by filing a complaint with MCAD against some, but not all, of the defendants prior to filing a civil suit.  Thus, MCAD had been able to investigate the complaint prior to the lawsuit, even though not all of the parties eventually named as defendants were a part of that investigation.  In contrast, no charge has been filed with MCAD here against any of the defendants, and MCAD therefore has not had an opportunity to investigate or review these claims in any capacity.

Further, the decision in Peters is inconsistent with the Supreme Judicial Court's holding in East Chop Tennis Club that the MCAD shall have "broad powers to receive, investigate and act on

---

[4]  One unpublished District Court judge held that a timely filing at MCAD was not a prerequisite for a dispute under the public accommodations statute.  CapoDiCasa v. Town of Ware, No. 17-30070-MGM, 2018 WL 3966303 at *5).  However, the majority of the cases in this Court have found that filing at MCAD is a prerequisite to filing suit.

complaints of discrimination." East Chop Tennis Club v. Massachusetts Comm'n Against Discrimination, 364 Mass. 444, 450, 305 N.E.2d 507, 512 (1973). This interpretation is also supported by case law holding that other discrimination statutes require filing at MCAD as a prerequisite. The procedures for discrimination claims are intended to be consistent. For example, an action alleging sexual harassment pursuant to G.L. c. 214 § 1C must follow the process of filing a complaint with MCAD prior to be filing in Court. Green v. Wyman-Gordon Co., 422 Mass. 551 (1996); Charland v. Muzi Motors, Inc. 417 Mass. 580, 585 (1994); Town of Brookine v. Alston 487 Mass. 278, 294 (2021). This Court has also dismissed claims under the Massachusetts Equal Rights Act (MERA) holding that where c. 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of MERA. Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 360 (2013). The same process applies to claims under G.L. c. 272 §98.

As Plaintiffs have failed to allege sufficient facts to maintain a claim under the public accommodations law, and because they have failed to submit this claim to the MCAD prior to filing suit, Count III of the Complaint should be dismissed.

IV. **Plaintiffs have failed to state any claims for relief against Chief Carmichael in any capacity.**

The Complaint is devoid of any factual allegations against Chief Carmichael. None of the allegations in the Complaint other than the description of the parties in paragraph 15, mention Chief Carmichael in either his official or individual capacity. Paragraph 15 merely states that Chief Carmichael is employed as the Chief of Police for the City of Newton. Chief Carmichael is named in his official capacity only. It is well-settled that "[a] suit against a public official in his official capacity is a suit against the government entity." Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 62 (1st Cir. 2015) (citing Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005); Wood v. Hancock Cnty. Sheriff's Dep't, 354 F.3d 57, 58 n.1 (1st Cir. 2003)). The claim

against Chief Carmichael in his official capacity is therefore effectively a claim against the City of Newton and must be dismissed on the grounds that it is duplicative.

## **CONCLUSION**

For the foregoing reasons, the City of Newton and John F. Carmichael Jr. respectfully request that this Honorable Court dismiss the Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,
CITY OF NEWTON,
JOHN F. CARMICHAEL JR.
By their attorneys,


*/s/ Krisna M. Basu*

Krisna M. Basu (BBO# 561026)
Assistant City Solicitor
Kristen Annunziato (BBO# 706923)
Assistant City Solicitor
City of Newton Law Dept.
1000 Commonwealth Avenue
Newton Centre, MA  02459
Tel: (617) 796-1240
kbasu@newtonma.gov
kannunziato@newtonma.gov


DATED: June 17, 2024

## CERTIFICATE OF
## SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent this day to the participants indicated as non-registered participants.


*/s/ Krisna M. Basu*
Krisna M. Basu (BBO#561026)


DATED: June 17,  2024