**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TRAILBLAZHERS RUN CO., ABEO POWDER, ELIZABETH ROCK, and FRANCES RAMIREZ,<br><br>               Plaintiffs,<br><br>    v.<br><br>BOSTON ATHLETIC ASSOCIATION, CITY OF NEWTON, and JOHN F. CARMICHAEL JR., Chief of Police of the Newton Police Department, in his official capacity,<br><br>               Defendants. | Civil Action No. 1:24-cv-10950-IT |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BOSTON ATHLETIC ASSOCIATION'S
MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

     A.    The Boston Athletic Association ........................................................ 2

     B.    The 2023 Boston Marathon ............................................................... 4

     C.    The 2024 Boston Marathon ............................................................... 6

LEGAL STANDARD.............................................................................................................6

ARGUMENT ........................................................................................................................7

I.     PLAINTIFFS DO NOT STATE A FEDERAL CLAIM UNDER SECTION 1983 ............................. 7

     A.    The B.A.A. Does Not Act Under Color Of State Law .......................... 8

           1.    Plaintiffs Fail The "State Compulsion" Test ............................... 9

           2.    Plaintiffs Fail The "Nexus/Joint Action" Test ......................... 10

           3.    Plaintiffs Fail The "Public Function" Test................................ 11

     B.    The B.A.A. Did Not Deprive Plaintiffs Of Federal Rights.................... 14

     C.    The Section 1985 Conspiracy Claim Fails........................................ 17

II.    PLAINTIFFS DO NOT STATE A CLAIM UNDER MASSACHUSETTS LAW ............................. 18

III.   PLAINTIFFS FAIL TO ESTABLISH A RIGHT TO INJUNCTIVE RELIEF ................................... 19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*,
  522 F.3d 1 (1st Cir. 2008) ......................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................7, 13

*Aulson v. Blanchard*,
  83 F.3d 1 (1st Cir. 1996) ........................................................................................17

*Ayala-Sepulveda v. Municipality of San German*,
  671 F.3d 24 (1st Cir. 2012) ....................................................................................15

*Badio v. G4S Solution, USA*,
  2021 WL 102656 (D. Mass. Jan. 12, 2021) ................................................14, 15, 16

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) .............................................................................................9, 11

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ...............................................................................................17

*Bush v. Fantasia*,
  2022 WL 4134501 (D. Mass. Sep. 12, 2022) .........................................................18

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .............................................................................................19, 20

*Cohen v. President and Fellows of Harvard College*,
  568 F. Supp. 658 (D. Mass 1983) ..........................................................................11

*Cruz-Arce v. Mgmt. Admin. Servs. Corp.*,
  19 F.4th 538 (1st Cir. 2021) ...................................................................................12

*DeNicola v. Potter*,
  2020 WL 3545487 (D. Mass. June 30, 2020) .........................................................15

*Dietrich v. John Ascuaga's Nugget*,
  548 F.3d 892 (9th Cir. 2008) ....................................................................................9

*Doe1 v. Boston Public Schools*,
  2019 WL 1005498 (D. Mass. Mar. 1, 2019) ...........................................................15

*Equal Emp. Opportunity Comm'n v. Aviation Port Servs., LLC,*
  2020 WL 1550564 (D. Mass. Apr. 1, 2020) ........................................................................20

*Estades-Negroni v. CPC Hosp. San Juan Capestrano,*
  412 F.3d 1 (1st Cir. 2005) .........................................................................8, 9, 11, 12

*Ginsberg v. Healy Car & Truck Leasing, Inc.,*
  189 F.3d 268 (2d. Cir. 1999) .........................................................................................9

*Griffin v. Breckenridge,*
  403 U.S. 88 (1971) ......................................................................................................17

*Kennedy v. Town of Billerica,*
  617 F.3d 520 (1st Cir. 2010) .......................................................................................16

*Klunder v. Brown University,*
  778 F.3d 24 (1st Cir. 2015) ............................................................................7, 8, 10

*Lu v. Smith,*
  2016 WL 4595206 (D. Mass. Sep. 2, 2016) ................................................................15

*Leaver v. Life Care Centers of America, Inc.,*
  2024 WL 218467 (D. Mass. Jan. 19, 2024) .................................................................8

*Lugar v. Edmondson Oil, Inc.,*
  457 U.S. 922 (1982) ....................................................................................8, 11, 14

*Lyons v. National Car Rental Systems, Inc.,*
  30 F.3d 240 (1st Cir. 1994) .........................................................................................16

*McGinn v. Executive Office of Energy and Environmental Affairs,*
  496 F. Supp. 3d 541 (D. Mass. 2020) ............................................................................7

*Meuse v. Stults,*
  421 F. Supp. 2d 358 (D. Mass. 2006) ..........................................................................11

*Monell v. Dep't of Social Services of City of New York,*
  436 U.S. 692 (1978) .....................................................................................................16

*Peters v. Boston Properties, Inc.,*
  2021 WL 3493907 (Mass. Super. Ct. June 15, 2021) ..................................................18

*Rodriguez v. Doral Mortgage Corp.,*
  57 F.3d 1168 (1st Cir. 1995) ........................................................................................18

*Rodriguez-Cirilo v. Garcia,*
  115 F.3d 50 (1st Cir. 1997) ..........................................................................................16

*Roe v. Healey*,
    78 4th 11 (1st Cir. 2023) ...........................................................................................19

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987) ...................................................................................................13

*Santiago v. Puerto Rico*,
    655 F.3d 61 (1st Cir. 2011) ..................................................................................10, 12

*Schofield v. Clarke*,
    769 F. Supp. 2d 42 (D. Mass. 2011) .........................................................................15

*Strahan v. AT&T Mobility, LLC*,
    270 F. Supp. 3d 535 (D. Mass. 2017) ..................................................................11, 13

*Xinrong Zhuang v. Benvie*,
    2018 WL 10335959 (D. Mass. Feb. 9, 2018) ...........................................................10

*Young v. Healey*,
    2020 WL 5995213 (D. Mass. Oct. 9, 2020) ..............................................................20

**Statutes and Regulations**

42 U.S.C. § 1983 ..................................................................................................................1

42 U.S.C. § 1985 .............................................................................................................1, 17

Massachusetts General Laws Chapter 272, § 98 ..............................................................18

## INTRODUCTION

The Boston Marathon would not be the Boston Marathon without the incredible fans who line all 26.2 miles of the marathon's storied route.  It would also not run seamlessly and safely without the thousands of police and public safety officials who every year help to ensure an orderly environment for the runners and spectators alike.  As those who attend know well, every year an extraordinary community and public safety apparatus gathers on the racecourse to celebrate the achievements of runners from across the country and the world.  For over a century, the Boston Athletic Association ("B.A.A.") has had the honor of working with runners, spectators, and the communities through which the marathon passes to help carry on this historic tradition.  As Boston Mayor Michelle Wu observed following this year's marathon, "The energy and joy at the 128th Boston Marathon was like nothing else—strength and community and all the love in the world for our runners."[1]

It is also true that the sport of running is not immune from inequalities in our society.  As described below, the B.A.A. has a long-standing commitment to confront these issues.  And while there is more work to be done, the B.A.A. remains committed to greater inclusion at all B.A.A. events and to promoting better access to the sport of running in communities in Boston and beyond.

Yet while the B.A.A. acknowledges Plaintiffs' concerns, there is no plausible allegation in the Complaint that anyone targeted any protected community (whether Plaintiffs or any other) for any adverse treatment during the 2023 Boston Marathon, let alone in a manner actionable under 42 U.S.C. § 1983, 42 U.S.C. § 1985, or Massachusetts law.  The B.A.A. categorically rejects any suggestion that it did so.  It is fundamentally false—and the Complaint cannot and does not plausibly allege—that the B.A.A. directed the Newton Police or anyone else to target any group

---

[1] Mayor Michelle Wu (@mayorwu), Instagram,
https://www.instagram.com/mayorwu/p/C5yxjuSJHPP/?img_index=1 (last visited June 15, 2024).

on account of their race, or even that the B.A.A. would have authority to do so.  And the notion

that this Court can award monetary or equitable relief under Section 1983 against the B.A.A.—a

non-profit corporation—is foreclosed as a matter of law.

Diversity in the sport of running is critically important.  But the Complaint does not state

a claim.  This Court should dismiss with prejudice.

## BACKGROUND

### A.        The Boston Athletic Association

The B.A.A. is a non-profit organization established in 1887 that promotes a healthy

lifestyle through sports, particularly the sport of running.  The B.A.A. sponsors and organizes

several races each year, most famously the Boston Marathon—the oldest annual marathon and

among the world's most celebrated marathon events.  *See* Dkt. 1, Complaint ("Compl.") ¶ 17.  In

keeping with its mission and in partnership with numerous organizations, including Plaintiff

TrailblazHers, the B.A.A. has promoted inclusivity and belonging at the Boston Marathon and in

the sport of running more generally.  The Boston Running Collaborative, for example, is an

initiative developed by the B.A.A. that brings together organizations and individuals committed to

building the diverse Boston running community championed by groups like TrailblazHers, and

both organizes events and awards grants (including to TrailblazHers) to achieve those ends.[2]  But

while that is all the Complaint acknowledges (¶ 19), the B.A.A. does much more.  For example,

the B.A.A. has partnered with Wings of America since 2017 "to commemorate the legacy of

Indigenous distance runners and promote the aspirations of an upcoming generation of Indigenous

[2] *See* B.A.A., *Boston Running Collaborative*, https://www.baa.org/get-involved/boston-running-collaborative (last visited June 15, 2024).

2

student-athletes."[3]   Through its Neighborhood Fitness Series, the B.A.A. partners with Boston Children's Hospital to welcome athletes of all abilities to events hosted in various communities throughout Boston, including the East Boston Memorial Park, the Hunt Almont Park in Mattapan, the Pope John Paul Park in Dorchester, the Franklin Park in Roxbury and Dorchester, and the Reggie Lewis Track and Athletic Center in Roxbury—where the B.A.A. also sponsors one of the city's largest indoor track meets.[4]   The B.A.A. has also long partnered with Boston Public Schools, including by hosting the middle school cross country championship held at Franklin Park since 1997.  And, in consultation with relevant experts, the B.A.A. has reaffirmed its commitment to racial justice, ensuring those values are reflected in all B.A.A. events and programming.[5]

TrailblazHers is aware of all this.  Following the events identified in the Complaint and described below, the B.A.A. actively engaged with TrailblazHers to listen to their concerns as part of B.A.A.'s commitment to continually improve its engagement, inclusivity, and sense of belonging.  As the B.A.A. publicly described, since the 2023 Boston Marathon, the B.A.A. has: (i) improved its guidelines and engaged with the eight cities and towns through which the marathon runs, outlining that the B.A.A. expects equitable enforcement of all rules and guidance from start to finish; (ii) enhanced its internal Diversity, Equity, Inclusion, and Belonging ("DEIB") trainings and updated volunteer materials to include implicit bias training; (iii) updated and clarified spectator guidelines about keeping a clear course from start to finish; (iv) partnered with the City of Boston to expand the Boston's Marathoners program, which provides race numbers to Boston

---

[3] Wings of America, *Boston Marathon "Pursuit" Program*, https://www.wingsofamerica.org/pursuit/ (last visited June 15, 2024).

[4] *See* B.A.A., *Neighborhood Fitness Series*, https://www.baa.org/get-involved/baa-neighborhood-fitness-series-presented-boston-childrens-hospital (last visited June 15, 2024).

[5] *See* BAA, *Commitment to Racial Justice*, https://www.baa.org/commitment-racial-justice (last visited June 15, 2024).

residents without requiring a qualifying time or fundraising; (v) engaged with run crews like TrailblazHers and others to explore opportunities for Cheer Zones and other ways to create a welcoming environment; and (v) continued to commit to funding organizations that serve Black, Indigenous, and/or People of Color ("BIPOC") communities and expanding the B.A.A.'s work in predominantly BIPOC neighborhoods.[6]

As these examples demonstrate, before and entirely apart of this litigation, the B.A.A. has been committed to racial and broader inclusion in its events and programs, held true to that commitment during the 2023 and 2024 marathons, and remains steadfast in that commitment for the 2025 marathon and beyond.

### B.     The 2023 Boston Marathon

The 2023 Boston Marathon—the first ever to include a category for non-binary runners—occurred on April 17, 2023.  Compl. ¶ 25.  Approximately 27,000 runners participated (representing all 50 states and 121 countries), and approximately 500,000 spectators came to cheer them on along all 26.2 miles of the famous route through Hopkinton, Ashland, Framingham, Natick, Wellesley, Newton, Brookline, and Boston.[7]  As happens every year—especially in 2023, the 10-year anniversary of the 2013 marathon bombings—federal, state, and local authorities, including local police from all neighboring communities and the Massachusetts and Federal Emergency Management Agencies, worked together to ensure orderly coordination of all government functions, including public safety and emergency medical and fire services.[8]

---

[6] B.A.A., *B.A.A. Community Support and Engagement*, https://www.baa.org/sites/default/files/2024-04/B.A.A.%20Community%20Support%20and%20Engagement.pdf (last visited June 15, 2024).

[7] B.A.A., *Boston Marathon Course Information*, https://www.baa.org/races/boston-marathon/enter/course-information (last visited June 15, 2024).

[8] City of Boston, Public Safety Preparations Announced Ahead Of 2023 Boston Marathon, https://www.boston.gov/news/public-safety-preparations-announced-ahead-2023-boston-marathon (last visited June 15, 2024).

In total, several thousand police and other public safety officials appeared in their official capacities to help ensure a safe day for everyone.

As they had done since 2020, Plaintiff TrailblazHers—a running crew dedicated to providing a supportive space for women, particularly women who identify as BIPOC—gathered at Mile 21 in Newton to show solidarity and support its members who were running the marathon. Compl. ¶ 20. According to the allegations in the Complaint—which the B.A.A. must assume to be true for purposes of this motion—here is what happened at Mile 21 on Marathon Day:

- Plaintiffs arrived at Mile 21 to set up their Cheer Zone at 5:30 AM. Compl. ¶ 25.

- At 12:30 PM, an unidentified spectator (not a party here) shot a "confetti cannon" near an unidentified "known runner" (also not a party). Compl. ¶ 26. The Complaint does not allege the absence of other race incursions at Mile 21.

- In response, a Newton Police officer allegedly confronted this spectator, grabbing their shirt. Compl. ¶ 26. Other (unidentified) Newton Police officers allegedly instructed the spectators at Mile 21 to "move back." Compl. ¶ 27.

- Unidentified Newton Police officers allegedly told unidentified person(s) at Mile 21 that they were "responding to a complaint from the B.A.A." Compl. ¶ 33. In response, "Plaintiffs' guest" (also unidentified) allegedly contacted Suzanne Walmsley, the B.A.A. Director of Community Engagement, to ask that she "call them off." *Id.* Ms. Walmsley's response or reaction, if any, is not alleged in the Complaint.

- More Newton Police officers arrived at Mile 21, some on bicycles, and established a presence there. Compl. ¶¶ 34-35.

5

- Three other instances were not met with similar police responses, specifically: (i) a balloon arch in Wellesley, Compl. ¶ 29; (ii) a "white male spectator [who] offered a doughnut to runners, and then ran along the man who finally accepted it," Compl. ¶ 30; and a "white woman and her child at Mile 21 in Newton, who appeared to be loved ones of a runner, [who] crosse[d] the street into the course to hug a participant." Comp. ¶ 31.

- Plaintiffs "remained in the cheer zone until the last few runners finished, and NPD officers remained until close to 4:30 PM"  Compl. ¶ 39.

Thus, as to the B.A.A., the Complaint amounts to a single material allegation: that someone from the Newton Police said they were "responding to a complaint from the BAA." Compl. ¶ 33.  No pleaded fact shows that B.A.A. employees did anything illegal, constitutionally tortious, or were even present at Mile 21.  Indeed, there is no allegation that the B.A.A. interacted with Plaintiffs at all, apart from receiving a phone call.

### C.    The 2024 Boston Marathon

As described above, after the 2023 Boston Marathon, the B.A.A. extensively engaged with TrailblazHers and others to address their concerns and to reaffirm the B.A.A.'s commitment to an inclusive marathon experience.  Progress was made.  Yet a year later, without notice and on the Friday before the Monday of the 2024 Boston Marathon, Plaintiffs filed this action.  The 2024 Boston Marathon proceeded as planned.  Plaintiffs have not sought to amend their Complaint to allege any facts related to the 2024 Marathon.

### LEGAL STANDARD

"To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must state a claim to relief that is plausible on its face.  In reviewing a complaint under a Fed. R. Civ. P. 12

motion to dismiss, the court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal conclusions (which need not be credited). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief." *McGinn v. Executive Office of Energy and Environmental Affairs*, 496 F. Supp. 3d 541, 546 (D. Mass. 2020) (cleaned up).

## ARGUMENT

### I.    PLAINTIFFS DO NOT STATE A FEDERAL CLAIM UNDER SECTION 1983

Plaintiffs first assert a claim against the B.A.A. under Section 1983 for "violating Plaintiffs' Fourteenth Amendment right to equal protection under the laws." Compl. ¶ 47. To assess such a claim, courts proceed in two steps: "a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." *Klunder v. Brown University*, 778 F.3d 24, 30 (1st Cir. 2015). Each factor must be "supported by factual allegations," and those factual allegations will "stop short of the line between possibility and plausibility of entitlement to relief" if they are "merely consistent with a defendant's liability" or evince only a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (internal quotations and citations omitted).

The Complaint falls well short on both counts. The B.A.A.—a non-profit private organization—cannot and does not act "under color of state law." *Id.* And Plaintiffs have not shown any "deprivation of federally secured rights," let alone one caused by the B.A.A. *Id.* Each failure is sufficient reason to dismiss: "If the plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant or defendants acted under color of state law, then the § 1983 claim is subject to dismissal." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005) (affirming 12(b)(6) dismissal).

### A.       The B.A.A. Does Not Act Under Color Of State Law

Because Plaintiffs ground their Complaint in the Fourteenth Amendment, and "because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil, Inc.*, 457 U.S. 922, 923-924 (1982). This "state action" requirement is bedrock to Section 1983 claims, and "inadequate allegations of state action are regularly handled at the motion to dismiss stage." *Leaver v. Life Care Centers of America, Inc.*, 2024 WL 218467, at *3 (D. Mass. Jan. 19, 2024). Here, it is undisputed that the B.A.A. is not a government entity. Compl. ¶ 13 ("The Boston Athletic Association ('B.A.A.') is a non-profit organization established in 1887 dedicated to promoting a healthy lifestyle through sports, especially running."). Accordingly, the Complaint must plead facts showing this is the "rare circumstance" where a "private party … can be deemed a state actor for § 1983 purposes." *Klunder*, 778 F.3d at 30.

The Complaint does no such thing. As a threshold matter, a fundamental error infects the core of Plaintiffs' Section 1983 theory against the B.A.A. While there are circumstances where a private party can be deemed a "state actor" under Section 1983 such that the private party's actions are "fairly attributable to the State," *Lugar*, 457 U.S. at 937, Plaintiffs are not attributing the B.A.A.'s actions—an alleged complaint to the Newton Police—to the government. Just the opposite, they are trying to attribute the *government's* alleged actions—a police presence at Mile 21—to the B.A.A. That gets the law and logic of Section 1983 exactly backwards. In the jurisprudence concerning when private parties can be sued under Section 1983, *the government is not a party*—if it were, plaintiffs need not sue the private party at all. But here the government *is* a party, and the complained-of conduct was allegedly undertaken by government actors. There is no basis to suggest that the B.A.A. could bear liability under Section 1983 for allegations

about police conduct brought against the police in this very case.  To hold otherwise would invert the law of Section 1983 and the fundamental state action requirement.

The Court could stop here—there is no reason to determine whether the B.A.A. can be deemed a state actor where a state actor has itself been sued in this case for the very conduct alleged.  It would also suffice to simply recognize that the actions attributed to the B.A.A.—an alleged complaint it made to the Newton Police, to which the Newton Police allegedly responded—categorically cannot be characterized as state action under Section 1983.  *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) ("Plaintiff's bare allegation that the defendants acted in concert in removing plaintiffs … from the public sidewalk is insufficient to establish joint action.  There is no evidence that Defendant[] … did anything more than summon the police.  Merely complaining to the police does not convert a private party into a state actor.") (cleaned up); *Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d. Cir. 1999) (foreclosing rule that "a private party would be considered a state actor … whenever it legitimately calls for official assistance or protection").  But if the Court identifies any need to go further, there are "three tests to determine whether a private party can fairly be characterized as a state actor: the state compulsion test, the nexus/joint action test, and the public function test." *Estades-Negroni*, 412 F.3d at 4-5.  Plaintiffs do not identify which theory they may hope to advance, but that is of little consequence because they fail under each.

1.     Plaintiffs Fail The "State Compulsion" Test

The first test is easily answered.  "Under the state compulsion test, a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" *Estades-Negroni*, 412 F.3d at 5 (quoting *Blum v. Yaretsky*, 457 U.S. 991 (1982)).  This test (like the other two) is stringent: "even the rights-depriving conduct

9

of an extensively regulated private party does not amount to action under color of state law unless the conduct itself is compelled (or, at least, heavily influenced) by a state regulation." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011).

Plaintiffs make no attempt to plead any facts satisfying this test. They identify no statute or regulation governing the B.A.A. in any relevant manner. There is also no basis to suggest an alleged "complaint" made by the B.A.A. to Newton Police—even were it actionable (it is not)— was "compelled" by the state. Indeed, there is no allegation that any state actor controlled, encouraged, or influenced the B.A.A. at all—just the opposite, Plaintiffs appear to argue that the B.A.A. influenced the police. That is the inverse of "state compulsion," and cannot transform the B.A.A. into a state actor. *See Xinrong Zhuang v. Benvie*, 2018 WL 10335959, at *3 (D. Mass. Feb. 9, 2018) (dismissing § 1983 claim where "there are no facts to show that Massachusetts in some manner coerced or encouraged" the alleged constitutional violation).

### 2.   Plaintiffs Fail The "Nexus/Joint Action" Test

Plaintiffs fare no better under the "nexus/joint action" test. That inquiry asks whether "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." *Klunder*, 778 F.3d at 31 (alterations in original). Again, this test exposes the incoherence of Plaintiffs' theory. The Complaint does not suggest that the City of Newton "insinuated itself" with the B.A.A. such that B.A.A. conduct is attributable to the City—again, just the opposite, the "challenged activity" *is itself* the City of Newton's activity. Where a plaintiff complains about police conduct directly, it is nonsensical to also inquire whether the police "insinuated itself" with a private party's unrelated conduct.

Regardless, "the complaint does not allege that the state was in any way, much less intimately, involved" in any of B.A.A.'s actions, let alone with the alleged "complaint" to

Newton Police.[9]  *Estades-Negroni*, 412 F.3d at 6.  That kind of "relationship category is very narrow," *Cohen v. President and Fellows of Harvard College*, 568 F. Supp. 658, 661 (D. Mass 1983), and "a plaintiff may invoke this so-called 'interdependence' theory of state action only where the private defendant is aligned so closely with the state that the undertow pulls them both inexorably into the grasp of § 1983." *Meuse v. Stults*, 421 F. Supp. 2d 358, 362 (D. Mass. 2006).  Here, at most, the Complaint alleges that—once a year—the B.A.A. and the City of Newton "collaborate before and during the day of the marathon."  Compl. ¶ 50.  "Collaboration" with one government entity (among many, both state and federal) for a single event once a year is a far cry from "insinuation" and "interdependence" so pervasive such that all conduct by the private party "may be fairly treated as that of the State itself."  *Blum*, 457 U.S. at 1004.  Were it otherwise, all B.A.A. conduct would be "fairly attributable" to every state and federal agency with which it works on Marathon Monday, ranging from the FBI, to the eight different police and fire departments along the marathon route, to the Massachusetts and Federal Emergency Management Agencies, *Lugar*, 457 U.S. at 937—an absurd result the Court should reject.  And to the extent Plaintiffs contend that the B.A.A. and the City of Newton are effectively symbiotic merely because Plaintiffs *say* so, "that is a 'conclusory statement' that the Court need not accept, and it is certainly not sufficient to satisfy the 'nexus' test."  *Strahan v. AT&T Mobility, LLC*, 270 F. Supp. 3d 535, 542 (D. Mass. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (dismissing under 12(b)(6) on these grounds).

3.    <u>Plaintiffs Fail The "Public Function" Test</u>

Third, the Complaint does not satisfy the "public function" test.  This inquiry, too, is demanding and narrow.  "Importantly, the public function test does not turn solely on whether a

---

[9] It would be odd at best to hold that the B.A.A., in allegedly calling the Newton Police about a race incursion, was also *de facto* the City of Newton itself.

private party is performing some public function (that is, a public purpose being executed on behalf of the state). It turns instead on whether the public function is one that has been 'traditionally exclusively reserved to the State.'" *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 545 (1st Cir. 2021). The activities that fall within the public function test "are few and far between" and "are characterized by exclusivity born of pervasive government involvement." *Santiago*, 655 F.3d at 69. Indeed, "exclusivity is an important qualifier, and its presence severely limits the range of eligible activities." *Id.* (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 842 (1982)). Thus, "the Supreme Court has found this aspect of the test to be satisfied only in narrowly circumscribed contexts—contexts in which a particular function rests at the core of the state's sovereign responsibilities," such as "the administration of elections" or the "management of a town in which the private party serves almost all functions of government." *Cruz-Arce*, 19 F.4th at 545 (citing *Nixon v Condon*, 286 U.S. 73 (1932) and *Marsh v. Alabama*, 326 U.S. 501 (1946)). In contrast, courts *reject* the "public function" test even when private parties render "highly regulated" services, such as "when a private party has assumed responsibility for the bonded warehousing of guns confiscated by state police," or "the involuntary commitment of the mentally ill," or "the education of disadvantaged high school students," or "the transportation of students to and from public schools." *Id.* (citing *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 11-12 (1st Cir. 2015), *Estades-Negroni*, 412 F.3d at 8-9, *Rendell-Baker*, 457 U.S. at 830, and *Santiago*, 655 F.3d at 69-70).

To describe this test is to explain why it has no application here. The B.A.A. organizes a marathon. It blinks reality to suggest that organizing a marathon is a traditionally "exclusive"

government function resting at the "core of the state's sovereign responsibilities."[10]  If housing the "involuntary commitment of the mentally ill" and public education are not sufficiently public functions to subject private actors to Section 1983 liability, certainly organizing a one-day sporting event does not either.  Although they state no facts to this effect, Plaintiffs may suggest that the B.A.A. is a "public entity" via some kind of assumption of delegated state power on Marathon Monday.  But if that is Plaintiffs' theory, the Complaint is at war with itself.  The B.A.A. clearly has no delegated police authority: *that is why the police are there*, and why the B.A.A. must sometimes call them.  And even if the B.A.A. somehow had authority to perform some security functions or make arrests (it does not), and even if any arrests were made at Mile 21 (there were none), "mere performance of basic private-security functions, without more, does not implicate an exclusive public function," as the "power to arrest has never been reserved exclusively to the state."  *Strahan*, 270 F. Supp. 3d at 541.

***

In assessing a motion to dismiss, the Court may also "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 678.  The Boston Marathon happens every year for all to see. No person who attends would reasonably think that the non-profit B.A.A., as the event's organizer, is the government itself, in control of every state and federal official across every jurisdiction.  And that is because it is not.  Section 1983 is a powerful tool, but it requires "careful adherence to the 'state action' requirement" in order to "preserve an area of individual freedom by limiting the reach of federal law and federal judicial power," with a "major consequence" of requiring courts "to respect the limits of their own power as directed against …

---

[10] In fact, in a case against the United States Olympic Committee, the Supreme Court recognized that "neither the conduct nor the coordination of amateur sports has been a traditional governmental function."  *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 545 (1987).

private interests," so as to maintain "a fundamental fact of our political order." *Lugar*, 457 U.S. at 937.  This Court should adhere to this principle and to the obvious reality that both as alleged in the Complaint and in the real world, the B.A.A. is a private entity and not a proper Section 1983 defendant.

### B.    The B.A.A. Did Not Deprive Plaintiffs Of Federal Rights

The B.A.A. is not the government, but that is only half the problem.  The other half is that Plaintiffs (i) do not plead "deprivation of any rights," (ii) let alone a deprivation "cause[d]" by the B.A.A.  42 U.S.C. § 1983.

First, as to "deprivation."  To be clear, Plaintiffs do not claim they were assaulted or seized or arrested,[11] or denied access to the race, or that their First Amendment speech or assembly rights were somehow infringed, or that they suffered any other Due Process or First or Fourth Amendment violation.  In fact, Plaintiffs allege they remained at Mile 21 through the end of the race.  Compl. ¶ 39.  Instead, Plaintiffs' only claim is that they were deprived of "equal protection" under the Fourteenth Amendment solely as a result of the Newton Police's mere presence at Mile 21 (and, presumably, because a Newton officer allegedly grabbed a spectator's shirt).  Compl. ¶ 47.  Even if that theory of constitutional harm is legally cognizable, it would require robust pleadings—even under the Rule 12(b)(6) standard.  "To survive a motion to dismiss, allegations of a Fourteenth Amendment violation must be supported by more than conclusory allegations," and "as a starting point, a plaintiff 'must first identify and relate specific instances where persons situated similarly *in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression.'"  *Badio v. G4S Solution, USA*, 2021 WL 102656, at *7, 19-cv-12591-ADB, (D. Mass. Jan. 12, 2021) (quoting *Ayala-*

---

[11] The unidentified person allegedly grabbed by an officer is not a plaintiff.  Compl. ¶ 26.

*Sepulveda v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012)) (emphasis added). A failure to plausibly plead this "threshold requirement," *Ayala-Sepulveda*, 671 F.3d at 32, is a failure to "state a claim for relief" under Rule 12(b)(6). *DeNicola v. Potter*, 2020 WL 3545487, at *7 (D. Mass. June 30, 2020); *see Lu v. Smith*, 2016 WL 4595206, at *3 (D. Mass. Sep. 2, 2016) (dismissing complaint on this basis); *Doe1 v. Boston Public Schools*, 2019 WL 1005498, at *6 (D. Mass. Mar. 1, 2019) (same); *Schofield v. Clarke*, 769 F. Supp. 2d 42, 48 (D. Mass. 2011) (same). In short, the Complaint must plausibly allege that Plaintiffs were both treated differently than other spectators similarly situated "in all relevant aspects," *and* that this different treatment was due to their race.

Again, the Complaint—even with its facts assumed true—does no such thing. It is true the Newton Police were present at Mile 21. But as anyone who attended the race knows, police line the course at multiple locations (especially on the 10-year anniversary of a terrorist attack). Further, even according to the Complaint, the Newton Police initially engaged at Mile 21 not because the B.A.A. asked them to, but because someone "launch[ed] a confetti cannon." Compl. ¶ 26. There is no allegation of similar actions being ignored elsewhere or by others. Rather, the Complaint identifies only three "specific instances": a "balloon arch" in Wellesley, a man with a doughnut elsewhere along the course, and a woman who hugged a runner at Mile 21. Compl. ¶¶ 29-31. It is implausible to suggest these other alleged race incursions are "situated similarly in all relevant aspects" as the launching of a "confetti cannon." And in any event, there is no plausible basis to assume any police reaction/non-reaction to those events has "the capacity to demonstrate that plaintiffs were singled out for unlawful oppression." *Badio*, 2021 WL 102656, at *7. In fact, Plaintiffs' photograph of the alleged "police barricade" at Mile 21 shows officers standing in front of multiple white spectators in the same manner as Black spectators. Compl. ¶ 34. Ultimately,

Plaintiffs are left with the conclusory allegation that "on information and belief … similarly-situated groups of non-Black spectators" were treated differently.  Compl. ¶ 37.  That is a conclusion, not a fact, and it is simply not enough.  *Badio*, 2021 WL 102656, at *7 ("Beyond these blanket assertions, however, Plaintiff does not allege that others similarly situated were treated differently … Nor does his amended complaint provide more than conclusory statements to support his claim that [the police] discriminated against him in violation of his Fourteenth Amendment rights.").

Finally, even if Plaintiffs did adequately plead constitutional injury at the hands of the police, they also "must show that [the B.A.A.'s] conduct was the cause in fact of the alleged deprivation." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997).  Plaintiffs' theory as how the B.A.A. "caused" the alleged harm is at best unclear—but to the extent they seek to hold the B.A.A. vicariously responsible for police conduct, they have pleaded no such facts.  Even were the B.A.A. somehow able to supervise the police, it would be subject to the same standard for municipal liability articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 692 (1978).  *See Lyons v. National Car Rental Systems, Inc.*, 30 F.3d 240, 246-247 (1st Cir. 1994).  Under *Monell*, there is no supervisory or *respondent superior* liability under Section 1983—rather, "municipal liability only" lies "for underlying, identifiable constitutional violations attributable to official municipal policy."  *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010).  That is a high bar in any case, but here Plaintiffs have not even attempted to plead the existence of any "official [B.A.A.] policy" that could cause their alleged injury—and there is none.  The Court may need to address the *Monell* inquiry more fully with respect to the City of Newton.  As to the B.A.A., the inquiry is simpler: the B.A.A. not only does not supervise the police—*it has no authority over the police at all*.  The Complaint does not and cannot allege otherwise.  The B.A.A. cannot "cause"

the actions of third parties it neither employs nor controls.  For these reasons, Count I must be dismissed.

### C.      The Section 1985 Conspiracy Claim Fails

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege facts showing the existence of: "(1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  This is a serious charge demanding a serious basis.  As the Supreme Court explained, the "purpose to deprive" requirement "demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276 (1993); *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971) ("The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the case of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.").  But the Complaint is devoid of any facts meeting even one of these many elements, let alone the demanding animus requirement.  No pleaded fact plausibly points to a "conspiracy" between the B.A.A. and anyone else.  No pleaded fact plausibly points to the B.A.A.'s specific "conspiratorial purpose" to deprive TrailblazHers or the individual plaintiffs of their equal protection rights.  No pleaded fact plausibly points to an overt act by the B.A.A. "for the very purpose" of that conspiratorial agenda.  And as already explained, no pleaded fact plausibly establishes a deprivation of constitutional rights in the first place.  There is simply no basis to allege a Section 1985 conspiracy.  Count II must be dismissed.

## II.   PLAINTIFFS DO NOT STATE A CLAIM UNDER MASSACHUSETTS LAW

"With the § 1983 claim set aside, plaintiff[s] [are] left without a federal case." *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 5 (1st Cir. 2008). Accordingly, this Court should dismiss the Massachusetts Section 98 claim for want of jurisdiction. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Dismissal is particularly appropriate here where Plaintiffs were required to file a complaint with the Massachusetts Commission Against Discrimination ("MCAD") before filing suit (which they did not do). *See Bush v. Fantasia*, 2022 WL 4134501, at *10 (D. Mass. Sep. 12, 2022) (collecting federal case law and holding that Chapter 98 public accommodation claims must first be filed with MCAD). *But see Peters v. Boston Properties, Inc.*, 2021 WL 3493907, at *5 (Mass. Super. Ct. June 15, 2021). Further, no Massachusetts case appears to address whether the public sidewalks lining the marathon's route (each the property of the cities or towns where they are located) are a place of "public accommodation" under the B.A.A.'s control. These are important state law questions, and with no federal claim left in this case and no diversity between the parties, the Massachusetts courts should resolve them.

If the Court retains jurisdiction, it should do so only to dismiss. In relevant part, M.G.L. c. 272, § 98 provides a cause of action against persons who discriminate "on account of race … in any place of public accommodation, resort or amusement." For all the reasons Plaintiffs' Section 1983 claim does not adequately allege a constitutional violation, Plaintiffs also fail to adequately allege that the B.A.A. discriminated against Plaintiffs "on account of" their race. There are no factual allegations that the B.A.A. treated TrailblazHers or any of its members any differently than any other "run crew" or "Cheer Zone" anywhere on the racecourse. There are no

18

factual allegations that the B.A.A. hindered or restricted Plaintiffs' access to the race or otherwise prevented them from participating as spectators.  And most importantly, there are no factual allegations that the B.A.A. treated Plaintiffs differently simply because of their race. Rather, once again, there is only an allegation that someone shot a "confetti canon" prompting an initial police response, that the B.A.A. separately made a complaint to the Newton Police, that the Newton Police responded—and that Plaintiffs remained at the same location until the race ended.  Compl. ¶ 39.  Those threadbare pleadings do not state a claim against the B.A.A., a non-profit with no authority over the police and which cannot be the "cause" of their alleged actions.

## III.   PLAINTIFFS FAIL TO ESTABLISH A RIGHT TO INJUNCTIVE RELIEF

Finally, Plaintiffs neither plead facts nor advance a theory justifying permanent injunctive relief against the B.A.A.[12]  For all the foregoing reasons, Plaintiffs do not state a claim and so cannot obtain equitable relief at all.  But injunctive relief is inappropriate for two additional and independently sufficient reasons: Plaintiffs do not and cannot demonstrate any future risk of harm, and so lack standing; and the injunction they seek—that the B.A.A. follow the law—is fundamentally improper under Rule 65.

First, it is well settled that "past harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur."  *Roe v. Healey*, 78 4th 11, 21 (1st Cir. 2023).  "Absent a sufficient likelihood that [they] will again be wronged in a similar way, [Plaintiffs are] no more entitled to an injunction than any other citizen[.]"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  "It is not enough for [Plaintiffs] to assert [they] could be subjected in the future to the effects of an allegedly unconstitutional [action]: the prospect of harm must have an 'immediacy and reality.'"

---

[12] The Complaint claims to seek preliminary relief, but Plaintiffs did not move for such.

*Young v. Healey*, 2020 WL 5995213, at *2 (D. Mass. Oct. 9, 2020) (quoting *Boston's Children First v. Boston School Comm.*, 183 F. Supp. 2d 392, 394 (D. Mass. 2022)).

The Complaint makes no effort to plead a real threat of future constitutional harm. It cites no B.A.A. policy or practice of discrimination, nor any facts demonstrating these particular plaintiffs are at risk of any unconstitutional actions at future events. In fact, Plaintiffs attended the intervening 2024 Boston Marathon without incident, belying any need for injunctive relief. And while Plaintiffs certainly plead that they fear future discrimination, as a legal matter "it is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehension." *Lyons*, 461 U.S. at 107 n.8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.").

Second, even if they had standing (which they do not)—and even if Plaintiffs adequately pleaded that the B.A.A. discriminated against them in the first place, which they did not—the Court still cannot "enjoin" the B.A.A. "from discriminating against Plaintiffs" in the future. Compl. p. 18. Rule 65 requires injunctions be detailed and clear; a "proposed injunction" that "essentially command[s] defendant to obey the law concerning [] discrimination and retaliation" is improper, as it is "vague, overly broad, and does not provide defendant with adequate notice of the specific acts prohibited." *Equal Emp. Opportunity Comm'n v. Aviation Port Servs., LLC*, 2020 WL 1550564, at *12 (D. Mass. Apr. 1, 2020). Courts in this circuit and elsewhere routinely reject "general 'obey the law' injunctions," and so too should this one. *Id.* at *11.

## CONCLUSION

The Complaint does not state a claim for relief and should be dismissed with prejudice.

20

Date: June 17, 2024

Respectfully submitted,

*Felicia H. Ellsworth*
Felicia H. Ellsworth (BBO #665232)
Andrew S. Dulberg (BBO #675405)
Eric L. Hawkins (BBO #693289)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com
andrew.dulberg@wilmerhale.com
eric.hawkins@wilmerhale.com

Thais R. Ridgeway
(*pro hac vice pending*)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
thais.ridgeway@wilmerhale.com

*Attorneys for Defendant Boston
Athletic Association*