# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRAILBLAZHERS RUN CO., ABEO POWDER, ELIZABETH ROCK, and FRANCES RAMIREZ,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>BOSTON ATHLETIC ASSOCIATION, CITY OF NEWTON, and JOHN F. CARMICHAEL JR., Chief of Police of the Newton Police Department, in his official capacity,<br><br>　　　　　　　　　Defendants. | Civil Action No. 1:24-cv-10950-IT<br><br>**LEAVE TO FILE GRANTED:**<br>**August 5, 2024 (Dkt. 34)** |

**DEFENDANT BOSTON ATHLETIC ASSOCIATION'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

The Complaint against the B.A.A. can only survive if it adequately pleads (i) a factual basis that the B.A.A., a private non-profit sporting organization, is a "state actor"; and (ii) a factual basis to suggest the B.A.A. intentionally conspired with the Newton Police for the express purpose of targeting the Plaintiffs on the basis of their race. The Complaint fails on both fronts. The B.A.A.'s coordination with a host of federal and state government agencies during the Boston Marathon comes nowhere near the demanding standards for subjecting private actors to Section 1983 suits. And the suggestion that the B.A.A. entered into a civil rights conspiracy with the police is pure speculation, unadorned with the required factual basis to state a claim.

## ARGUMENT

### I. The B.A.A. Is Not A State Actor Or Co-Conspirator

The "state action inquiry is preliminary to, and independent of, the [merits] inquiry." *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 8 (1st Cir. 2015). The "bar is set quite high, and we have cautioned that it is only in rare circumstances that private parties can be viewed as state actors." *Id.* (cleaned up). There are only "three routes that can lead to a finding that a private party may fairly be said to be a state actor," *id.*, and Plaintiffs now specifically disclaim two of them. Opp. 14 n.10. This leaves Plaintiffs with a single theory: that the B.A.A. and the City of Newton are "so intertwined that they were effectively 'joint participants' in the challenged conduct." *Jarvis*, 805 F.3d at 8-9. Plaintiffs try to satisfy this test in two ways. First, they observe the unremarkable (and legally insufficient) fact that the B.A.A. coordinates with government entities during the Boston Marathon. Second, they simply repeat their (factually insufficient) Section 1985 conspiracy claim that the B.A.A. and the Newton Police knowingly agreed to racially profile them and worked together to achieve that shared unconstitutional goal. Both arguments fail.

#### A. Private Coordination With Public Safety Officials Is Not "State Action"

Plaintiffs first stress that during the Boston Marathon, the B.A.A. coordinates with myriad

1

government entities, the City of Newton among them. Opp. 14-16. And that is true. But "coordination" is not what the strict "joint nexus" (or "symbiotic relationship") test requires. That test requires a *merging* of the state and private actors such that their actions are legally indistinguishable: the "requisite nexus is premised on a showing of mutual interdependence." *Santiago v. Puerto Rico*, 655 F.3d 61, 71 (1st Cir. 2011). "The most salient factor in this determination is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs." *Id.* That alone defeats Plaintiffs' claims, but courts also look to "whether the private party has shared profits generated *from its challenged conduct* with the state," *Jarvis*, 805 F.3d at 9 (emphasis added). *See also Burton v. Wilmington Parking Authority*, 365 U.S. 715, 723-724 (1961) (joint business venture between government and private party).[1] Thus, in the seminal "joint action" case, the state leased its property to a business for the purpose of increasing government revenue, helped operate that business, and benefited specifically *from the alleged discrimination*. *Id.* at 726.[2] Only then was the private party's alleged discrimination appropriately deemed "state action." *Id*.

If these fact pattens seem inapposite to this case, it is because they are: nothing remotely like the kind of "joint action" courts recognize to be "state action" is pleaded in the Complaint, and nothing like that kind of relationship exists between Newton and the B.A.A. The B.A.A. is an independent charity with executives and a board of directors: the Complaint does not (and could not) allege that Newton controls its "day-to-day affairs." *Santiago*, 655 F.3d at 71. Nor have the

---

[1] *Burton* marks the outer boundary for a public-private "symbiotic relationship," and "in several later cases … the Court has either distinguished or ignored *Burton*'s broadest language." *Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 20 (1st Cir. 1999). That the Complaint falls well short of even *Burton* proves it comes nowhere near satisfying any modern "joint nexus" analysis.

[2] It is critical that the government specifically benefit from the unlawful act. *See Perkins*, 196 F.3d at 21 ("[A]nother factor … is whether (and if so, to what extent) the [the state] knowingly shared in the profits spawned by the [private party's] discriminatory conduct[.]" (citations omitted); *Barrios-Velazquez v. AEELA*, 84 F.3d 487, 495 (1st Cir. 1996) (same). Plaintiffs wisely do not go so far as to allege that the City of Newton profits from alleged racial discrimination.

B.A.A. (a non-profit) and Newton merged into a joint, profit-sharing business venture. *See Jarvis*, 805 F.3d at 9 ("shared profits" indicative of state action); *Burton*, 365 U.S. at 72. In fact, and as is obvious from the public record, the B.A.A. and the myriad federal and state entities with jurisdiction over the marathon are emphatically *distinct* entities, each with their own realm of responsibility: the local, state, and federal law enforcement attend to security; the fire departments, to public safety; the medical personnel, to medical emergencies; the Massachusetts Emergency Management Agency, to emergency preparedness; and the B.A.A., to organizing the race itself. The B.A.A. does not assume or wield governmental powers, or merge into government agencies: that is why the government agencies are there. In short, the police do their job: they have not "insinuated [themselves] into a position of interdependence" with the B.A.A., and so "the plaintiffs do not—and cannot—come close to making the requisite showing." *Jarvis*, 805 F.3d at 8.

The cases Plaintiffs cite prove the point. In *Citizens to End Animal Suffering and Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, the court analyzed the relationship between the City of Boston and Faneuil Hall. 745 F. Supp. 65, 73-74 & 73 n.19. Applying *Burton*, the court acknowledged "the narrowness of this inquiry" and held that Boston and Faneuil Hall were in a "symbiotic" relationship based on three particular "indicia": (i) the "defendant leases its property from the City" (a factor the court termed "significant"); (ii) it did so permanently "for the public's benefit"; and (iii) "most important, the City derives an economic benefit from the defendant's [wrongful] policy of restrictions," because any "downturn in business directly affects the City's economic goals, as the Marketplace is clearly an 'indispensable' part of the City's plan." *Id.* Those facts bear no resemblance to the Complaint or to the relationship between the B.A.A. and Newton: for example, the B.A.A. applies for a temporary permit to host a race, and has not assumed an "indispensable" part of any Newton economic "plan." The reasoning in *Carmack v.*

3

*MBTA* is even further afield, where the court analyzed the relationship between the MBTA and the Massachusetts Bay Commuter Railroad Company—an entity that "replaced Amtrak" and "entered into a contract with MBTA … to take over the operation of commuter rail services within the Commonwealth." 465 F. Supp. 2d 18, 23 (D. Mass. 2006).  Here, again, there is no year-round commercial and profit-generating contract between the B.A.A. and the City of Newton, let alone one to take over services as quintessentially public as operation of the commuter rail.

Finally, Plaintiffs cite a recent decision in this district concerning private entities that contracted with the State of Florida to transport migrants to the Northeast. *Alianza Americas v. DeSantis*, 2024 WL 1381926, at *24-25 (D. Mass. March 29, 2024).  But that decision relied on the "state compulsion" test that Plaintiffs specifically disavow. *Id.* at *24; Opp. 14 n.10.  What is more, the court observed that it was "unlikely" to have found that the plaintiffs satisfied the "nexus/joint action" test on which these Plaintiffs do rely, because the "most salient" factor for that test is whether the "private entity is (or is not) independent in the conduct of its day-to-day affairs." *DeSantis*, at *23 n.23.  "Although the Amended Complaint alleges Florida's involvement in the scheme at issue here, it does not establish that [Defendant] is not independent from the state with respect to its day-to-day affairs." *Id.*  Here, even assuming Plaintiffs have shown the Newton Police's involvement in a "scheme" at Mile 21, they certainly do not plead (and cannot show) that B.A.A. lacks independence from Newton in carrying out its daily operations.  Thus, under even *Alianza*, Plaintiffs have failed to "'pass' the nexus/joint action test." *Id.*

The cases Plaintiffs omit are even more telling.  The B.A.A. is a private entity that organizes sporting events.  A review of cases against similar types of defendants reveals a consistent rejection of Plaintiffs' arguments.  In *NCAA v. Tarkanian*, for example, a public university (a state actor) disciplined a coach because the NCAA (a private entity that regulates

4

college sports) found him guilty of misconduct. 488 U.S. 179 (1988). The coach sued the NCAA under Section 1983, citing extensive coordination between the NCAA and its constituent public schools as proof the NCAA is a "state actor." The Supreme Court denied the gambit. As an initial matter, if the NCAA—which governs public universities' sporting programs year-round and outright promulgates regulations these schools must follow at their peril—is not a "state actor," then certainly the B.A.A. (which hosts a few races per year) is not either. More fundamentally, *Tarkanian* exposed the backwards nature of that plaintiff's posture, and the similarly backwards nature of this case. In contrast to the "the typical case raising a state-action issue"—where "a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that deceive conduct as state action," *id.* at 192—there the state *itself* "actually suspended" the defendant, and the plaintiff paradoxically argued that the state's "action in compliance with the NCAA rules and recommendations turned the NCAA's conduct into state action." *Id.* at 193. So too here—Plaintiffs argue that even though the City of Newton allegedly "caused the harm," the B.A.A. was transformed into a state actor because the police allegedly acted at the B.A.A.'s direction. This reasoning, the *Tarkanian* Court observed in rejecting it, "requires … step[ping] through an analytical looking glass." *Id.*; *see also* Mem. at 8 (Plaintiffs get "the law and logic of Section 1983 exactly backwards").

The First Circuit, addressing claims against private sporting organizations like the B.A.A., has ruled similarly. For example, in *Ponce v. Basketball Fed. of Com. of Puerto Rico*, 760 F.2d 375, 376 (1985), the defendant was "a private sporting organization established to oversee and direct amateur basketball in Puerto Rico" alongside the official government body that regulated amateur sports more generally. Reversing the district court's finding of "state action" on the part of the private sports league, the First Circuit held that even though there was a "contractual

5

relationship with the League governing the use of the [government's] stadiums," and even though the government received a per-ticket profit, that does not establish the requisite "interdependence" to transform the private entity into a state actor. *Id.* at 381.

Likewise, in *Perkins*, 196 F.3d at 16, 20-23, the defendant was a non-profit basketball league that organized an annual tournament. The town formally endorsed the league and allowed the league use of town facilities. Yet the First Circuit found no "nexus" between them, citing the lack of any meaningful mutually-beneficial economic relationship (let alone vis-à-vis the challenged discriminatory conduct), and holding that the town's mere sanctioning of the league "does not evince an insinuation of the Town's into the [the league's] ordinary course of day-to-day business." *Id.* at 23. Further, like the B.A.A.—whose activities are certainly "not confined" to the Boston Marathon—the First Circuit observed that the league "administers and coordinates teams of youngsters throughout a lengthy season … the Town simply is not involved to any meaningful degree in those myriad activities." *Id.* There may have been "coordination of efforts" at times, but not a "join[ing] at the hip" constituting a "symbiotic relationship." *Id.* So too here.

A contrary holding would radically expand Section 1983. Just as the B.A.A. works with the City of Newton during the Boston Marathon, it works with well more than a dozen other state and federal agencies. To hold that such coordination transforms the B.A.A. into a state actor would render the B.A.A. "accountable for the actions" of every one of those entities, a "result" that is "clearly absurd." *Ponce*, 760 F.2d 375; *cf. Tarkanian*, 488 U.S. at 193 (rejecting equivalence between the NCAA and the "several hundred other public and private member institutions each similarly affected by [NCAA] policies"). Nor would Plaintiffs' proposed rule be confined to the B.A.A. To allow Plaintiffs' claim to proceed would render *every* private entity that coordinates with police (or fire departments, or other local or state officials) during a public event—*i.e.*, the

6

organizers of every concert, sporting event, and parade in the Commonwealth—a "state actor" and potential Section 1983 defendant. It is hard to imagine a more potent way to discourage cooperation with public safety officials. That is why no case supports the Plaintiffs' expansive argument, and this should not be the first. *Cohen v. President and Fellows of Harvard College*, 568 F. Supp. 658, 661 (D. Mass. 1983) ("the symbiotic relationship category is very narrow").

### B.  Plaintiffs Cannot Plead A Civil Rights Conspiracy

Unable to plead anything like the "interdependence" and "insinuation" required to prove "symbiosis," Plaintiffs resort to an even weaker theory: that the Newton Police and the B.A.A. deliberately acted in concert for the express *purpose* of discriminating against Plaintiffs, *i.e.* that there was a civil rights conspiracy between them. That is, Plaintiffs attempt to avail themselves of the rare type of private "state action" articulated in *Adickes v. S.H. Kress & Co.*, where the Supreme Court held that a private party can be subject to Section 1983 if they and the police "reached an understanding" to harm a plaintiff "because" of her race. 398 U.S. 144, 148, 151 (1970). This theory is no different than Plaintiffs' Section 1985 conspiracy claim (indeed, the *Adickes* court was speaking to that plaintiff's conspiracy claim). *Id.* at 152 ("a private party involved in such a conspiracy, even though not an official of the State, can be liable under s. 1983"); *accord Wagenmann v. Adams*, 829 F.2d 196, 209 (1st Cir. 1987) ("Inasmuch as Anderson is and was a private citizen, liability under 42 U.S.C. § 1983 requires showing that he collogued with state actors … to deprive the plaintiff of his civil rights.").

But to plead a civil rights conspiracy requires substantial facts evincing an express agreement for the explicit purpose of inflicting the specific constitutional harm, furthered by an overt act. *Williams v. City of Boston*, 771 F. Supp. 2d 190, 204 (D. Mass. 2011). "In an effort to control frivolous conspiracy suits under s. 1983 … [i]t has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations

of conspiracy but do not support their claims with reference to material facts." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977). Moreover, under Section 1985, Plaintiffs must plead facts showing an "invidiously discriminatory motivation." *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971). Private and public parties working together, even closely, is not enough: there must facts demonstrating a shared and intentional purpose to unconstitutionally discriminate. *See Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988).[3]

Plaintiffs come nowhere near adequately pleading these elements. They plead no facts that plausibly evince an express agreement between the B.A.A. and Newton Police to specifically target Plaintiffs because of their race pursuant to an "invidiously discriminatory motivation." The only actions attributed to the B.A.A. are: (i) calling the police about a race incursion (where spectators of every color were celebrating together); and (ii) receiving a complaint about the police from someone associated with Plaintiffs. Compl. ¶ 33. That is all. And under no standard does that suffice to plead a federal civil rights conspiracy, *i.e.* an express agreement with the police to target Plaintiffs due to their race.

Indeed, the Complaint and opposition do not just lack facts—they outright contradict themselves. The Complaint pleaded that a Newton police officer first engaged directly "in response" to someone launching a "confetti cannon." Compl. ¶ 26. In its motion, the B.A.A. observed that an officer engaging *on his own initiative* does not evince a conspiracy with the B.A.A. That point apparently landed, so now (at 20) Plaintiffs rewrite the Complaint to hypothesize that "NPD did not approach Plaintiffs … until summoned and directed by the B.A.A." But officers either engaged based on their own observations of a "confetti canon," or they were

---

[3] Plaintiffs suggest (at 11) that the B.A.A. could be liable for "unconscious bias" or "unthinking stereotypes." If that is Plaintiffs' theory, they admit there was no "conspiracy." Conspiracies are definitionally intentional and malicious. They cannot be entered into "unthinkingly" or "unconsciously."

8

"summoned"—it cannot be both.  Similarly, nowhere did Plaintiffs allege any B.A.A. response to the alleged complaint it received from "Plaintiff's guest" about the police.  Compl. ¶ 33.  Yet now the opposition claims the B.A.A. not only responded, but actually called the police off.  Opp. 16-17.  This is not in the Complaint.  More importantly, it is incoherent: it makes no sense that the B.A.A., acting pursuant to an invidiously discriminatory motive and a pre-arranged agreement with the police to discriminate, both told Newton Police to "back off" at the request of "Plaintiff's guest," *and then* (fifteen minutes later) ordered the police to target Black spectators—*and* that the police simply obeyed both times.  These allegations simply are not plausible.

At bottom, Plaintiffs challenge the Newton Police's response to a race incursion in 2023.  The City of Newton will answer that charge directly.  As to the B.A.A., however, each of Plaintiffs' claims are rooted in the same conclusory conjecture that need not and should not be credited:  that the B.A.A. and the Newton Police explicitly agreed to target Plaintiffs because of the color of their skin.  There is no basis for that theory in the Complaint.  There is no basis for that theory in reality.  The Complaint should be dismissed.

## II.     The Opposition Fails To Address Multiple Defects In The Complaint

The opposition is replete with other errors, but a few issues warrant special mention.  First, the B.A.A. explained that Plaintiffs are apparently trying to hold the B.A.A. vicariously responsible for the actions of (unnamed) individuals.  That is nonsensical, given no B.A.A. employee is alleged to have even been at Mile 21, and the B.A.A. does not employ Newton police officers.  But if that is Plaintiffs' theory, they must satisfy the rigorous *Monell* inquiry, *i.e.*, they must identify a specific B.A.A. *policy or custom* of discrimination; they cannot rely on *respondeat superior*.  Mem. 16.  Plaintiffs simply ignored this argument.  The Court does not have that luxury; it is binding law.  *Lyons v. National Car Rental Systems, Inc.*, 30 F.3d 240, 246-247 (1st Cir. 1994) ("Congress declined to make municipal liabilities vicariously liable under § 1983 … these

9

justifications are equally applicable to private corporations."). If the Court dismisses the City of Newton under *Monell*, it must similarly dismiss the B.A.A.

Second, the B.A.A. identified jurisdictional issues with proceeding under Massachusetts law against the B.A.A. if the federal claims are dismissed. Mem. 18. Again, Plaintiffs ignored the issue. Third, the B.A.A. repeatedly stated that it works with multiple police forces across the marathon route. Now that Plaintiffs have doubled down on an alleged conspiracy between the B.A.A. and the City of Newton specifically, one wonders how a "balloon arch" *in Wellesley* (Compl. ¶ 29), where the Newton Police have no jurisdiction, is possibly relevant. A "balloon arch" in Wellesley (or a man with a doughnut elsewhere) is not probative of a civil rights conspiracy between the City of Newton and the B.A.A.

Fourth, relatedly, Plaintiffs do not cure the lack of any meaningful "comparator" to their activities in Newton. Mem. 15-16. Comparators must be similar "in all relevant aspects"—for example, predominantly white and equally large "running crews" that caused similar incursions somewhere in Newton—but were somehow treated differently by the B.A.A. Nothing like that is alleged. Instead, all Plaintiffs can point to a single "hug" between mother and child near Plaintiffs' cheer zone, Compl. ¶ 31, and a few scattered and dissimilar events (*e.g.* a "ballon arch") within different police jurisdictions.

Finally, nowhere do Plaintiffs deny having attended and celebrated the 2024 Marathon without incident. The B.A.A. is glad they did. And that proves two things. The B.A.A. harbors no racial animus against them (as required for a conspiracy). And Plaintiffs cannot show they are at risk of future harm. There is nothing for the Court to enjoin.

## CONCLUSION

The Complaint should be dismissed with prejudice.

10

| | |
|---|---|
| Date: August 20, 2024 | Respectfully submitted,<br><br>*Felicia H. Ellsworth*<br>Felicia H. Ellsworth (BBO #665232)<br>Andrew S. Dulberg (BBO #675405)<br>Eric L. Hawkins (BBO #693289)<br>WILMER CUTLER PICKERING HALE<br>　AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br>felicia.ellsworth@wilmerhale.com<br>andrew.dulberg@wilmerhale.com<br>eric.hawkins@wilmerhale.com<br><br>Thais R. Ridgeway<br>(admitted *pro hac vice*)<br>WILMER CUTLER PICKERING HALE<br>　AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>thais.ridgeway@wilmerhale.com<br><br><br>*Attorneys for Defendant Boston Athletic Association* |