UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRAILBLAZHERS RUN CO., ABEO POWDER, ELIZABETH ROCK, and FRANCES RAMIREZ,<br><br>       Plaintiffs,<br><br>              v.<br><br>BOSTON ATHLETIC ASSOCIATION, CITY OF NEWTON, and JOHN F. CARMICHAEL JR., Chief of Police of the Newton Police Department, in his official capacity,<br><br>       Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*    Civil Action No. 1:24-cv-10950-IT |

MEMORANDUM & ORDER

March 20, 2025

TALWANI, D.J.

This action raises allegations of racial discrimination by Defendants City of Newton ("City") and its Chief of Police (collectively, the "Newton Defendants") and the Boston Athletic Association ("BAA") against certain spectators at the 2023 Boston Marathon. Plaintiffs bring three causes of action against all Defendants: an Equal Protection claim under 42 U.S.C. § 1983; a civil rights conspiracy claim under 42 U.S.C. § 1985(3); and a state statutory claim under the Massachusetts Public Accommodations Law, M.G.L. c. 272, § 98. See Compl. ¶¶ 44-59 [Doc. No. 1]. The Newton Defendants and the BAA filed Motions to Dismiss [Docs. No. 20, 23]. Plaintiffs oppose the motions and have filed a Request for Judicial Notice [Doc. No. 31]. For the reasons set forth below, the Motions are GRANTED in part and DENIED in part and the Request for Judicial Notice is DENIED.

## I.    Legal Standard

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.    Facts As Alleged in the Complaint

Plaintiff TrailblazHers Run Co. ("TrailblazHers") is "an all-female run crew and community organization in Greater Boston dedicated to providing a supportive space for women, particularly women who identify as Black, Indigenous, and/or People of Color ('BIPOC')." Plaintiffs Abeo Powder, Elizabeth Rock, and Frances Ramirez are three of TrailblazHers' founding members. Compl. ¶¶ 9-12 [Doc. No. 1].

Plaintiffs sue two sets of Defendants: the BAA, a non-profit organization which "hosts and organizes the Boston Marathon," id. ¶ 13, and the City of Newton and John F. Carmichael Jr., who served as the Chief of Police for the Newton Police Department at all times relevant to this action and is sued in his official capacity, id. ¶¶ 14-15.

"For the last four years, TrailblazHers, along with other running crews of color, have established a 'cheer zone' at Mile 21 on the Boston Marathon route in Newton." <u>Id.</u> ¶ 20. That location "stands as a key place where runners of color are acknowledged and celebrated." <u>Id.</u> ¶ 24. "In marathon culture, including at the Boston Marathon, spectators frequently cheer loudly and boisterously, and it is not uncommon for spectators to enter onto the course briefly to express solidarity and support." <u>Id.</u> ¶ 21.

The events relevant to this action occurred during the 2023 Boston Marathon, on April 17, 2023. <u>See generally id.</u> ¶¶ 2, 25. That day, "Plaintiffs again organized a cheer zone in Newton at Mile 21. Plaintiffs extended invitations to other BIPOC running crews to show solidarity and support for fellow BIPOC runners. The cheer zone was comprised of more than one hundred people, mostly people of color." <u>Id.</u> ¶ 23. In the early morning, Plaintiffs "set up tents, including one for the DJ, prepared cheering materials such as pompoms and confetti cannons, and arranged grills for food." <u>Id.</u> ¶ 25.

Around midday, a spectator in Plaintiffs' cheer zone "launched a confetti cannon as a known runner passed[.]" <u>Id.</u> ¶ 26. In response, a Newton police officer approached the spectator, "fisted the front of the spectator's shirt, demanded identification, and threatened an arrest for allegedly running in the course. The spectator remained calm and explained to the officer that he was not obstructing any runners." <u>Id.</u> Fifteen minutes later, Newton police officers were "continuing to yell and instruct spectators in TrailblazHers' Mile 21 cheer zone to move back, even though no one was obstructing runners. Plaintiffs did not observe [the first officer], or any other NPD officer, instructing white spectators in nearby cheer areas to move back." <u>Id.</u> ¶ 27.

"As the law enforcement response unfolded, NPD officers stated that they were responding to a complaint from the BAA. To address this matter, Plaintiffs' guest contacted Suzanna Walmsley, BAA's Director of Community Engagement and a leader on the Running Collaborative Steering Committee, and expressed concerns about NPD officers surrounding the running crews. Walmsley was asked to call them off." Id. ¶ 33. "After a few minutes, NPD officers left the scene briefly." Id. ¶ 34. However, "moments later . . . an even larger group of approximately twenty NPD officers on bikes reappeared and formed a human barricade along the course, physically separating the Plaintiffs and their members from runners, obstructing their view, and preventing them from seeing passing runners in order to cheer them on. Additional NPD officers on motorcycles stationed themselves on the street behind the Plaintiffs' cheer zone, effectively surrounding and penning in the people in the cheer zone of color." Id. ¶ 34. Plaintiffs and the Newton police officers remained in the cheer zone "until close to 4:30P.M." Id. ¶ 39.

Plaintiffs "observed only their section get penalized for celebrating and demonstrating excitement." Id. ¶ 28. "Many BIPOC runners were shocked to see police officers concentrated at the only section of the marathon route with many spectators of color." Id. ¶ 35. Plaintiffs also identify specific instances in which white spectators entered the course but were not met with police intervention. First, at Mile 15, a Wellesley family set up a 10-foot blue and yellow balloon arch on the course for runners to pass through. Id. ¶ 29. This area, comprised of mostly white spectators, "lacked police presence or instructions to stay off the course." Id. Next, "a white male spectator offered a doughnut to runners, and then ran alongside the man who finally accepted it." Id. ¶ 30. No police intervened. Id. Third, "a white woman and her child at Mile 21 in Newton,

who appeared to be loved ones of a runner, cross[ed] the street into the course to hug a participant, without any intervention from BAA officials or NPD officers." Id. ¶ 31.

After the events of that day, Plaintiffs "spent dozens of hours preparing for and participat[ing] in ten separate meetings with the BAA, including many hours of discussion regarding the unlawful actions of NPD and brainstorming for additional safety measures for BIPOC participants and spectators at future marathons." Id. ¶ 41. Plaintiffs participated in similar meetings with other officials, such as the Mayor's Office for the City of Newton. Id. "In the end, however, neither the BAA nor NPD enacted any meaningful reforms to prevent racial profiling and harassment from happening again." Id. ¶ 42. Indeed, a news article reports that BAA President and CEO Jack Fleming said, "I apologized to the police for the position that they were put in, that I put the police in." Id. ¶ 42 & n.14.

## III.    Discussion

### A.    Claim Under 42 U.S.C. § 1983 for Violation of the Equal Protection Clause of the Fourteenth Amendment

A claim brought under 42 U.S.C. § 1983 requires a plaintiff to "show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015) (citation omitted). Plaintiffs claim that all Defendants acted under color of state law to deprive them of rights secured by the Equal Protection Clause of the Fourteenth Amendment. The court addresses each Defendant in turn.

#### 1.    City

The Newton Defendants argue that because Plaintiffs complain only of an isolated incident occurring during the 2023 Boston Marathon, Plaintiffs are unable to establish a

municipal custom, policy, or practice as required under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978), for municipal liability under 42 U.S.C. § 1983. The court agrees.

To demonstrate municipal liability, Plaintiffs must show that (1) the City had a custom, policy, or practice of selectively targeting people of color for enforcement on the sidelines of the Boston Marathon; (2) this custom, policy, or practice "amount[ed] to deliberate indifference to the rights of persons with whom the [officers] come into contact"; and (3) the custom, policy, or practice was the direct cause of the alleged constitutional violation. DiRico v. City of Quincy, 404 F.3d 464, 468-69 & n.12 (1st Cir. 2005). The custom, practice, or policy must be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. In the absence of allegations of an official policy, Monell permits liability if government conduct reflects "practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 691. "An unconstitutional policy . . . may be inferred from a single decision or act . . . [but] the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business." Wilson v. City of Bos., 421 F.3d 45, 59 (1st Cir. 2005) (citations omitted) (rejecting argument that police operation was city policy despite it being a large operation involving arrest warrants all over the city, commanded by a high-ranking officer, and videotaped for national distribution, because no evidence was offered that the high-ranking officer had the authority to set municipal policy).

Plaintiffs do not reference any state or local laws establishing the policy-making authority of a particular decisionmaker, see Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013), aside from a footnote asserting that "Newton's charter and applicable caselaw make clear" that

the Chief of Police is a final policymaker, Pls.' Opp. at 29 n.17 [Doc. No. 32]. But establishing the Chief of Police's policy-making authority is not enough for a Monell claim where Plaintiffs have not alleged that Carmichael directed the challenged activities of the Newton Police Department. Indeed, the Complaint fails to mention Carmichael at all, except to identify him as a party. See Compl. ¶¶ 8, 15 [Doc. No. 1].

Plaintiffs raise for the first time in their opposition that Carmichael "explicitly took credit for the NPD's conduct." Pls.' Opp. at 29 [Doc. No. 32].[1] Where this statement is not in the Complaint, the court may not consider it here. See Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005) (courts deciding motions to dismiss may only consider documents expressly incorporated within the complaint or documents to which a complaint's factual allegations are expressly linked and admittedly dependent upon).[2]

Because the Complaint does not explicitly name a final municipal decisionmaker responsible for the challenged conduct, Plaintiffs are left to argue that "the existence of an unconstitutional policy or custom can be inferred from the event itself." Pls.' Opp. at 28 [Doc. No. 32] (citing Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir. 1989)). But such an inference is permissible only where evidence in the record establishes that an unconstitutional policy is a well-settled practice in the community. See Bordanaro, 871 F.2d at 1158. Nothing in

---

[1] In support, Plaintiffs request that the court take judicial notice of a statement posted on social media on the NPD account on April 12, 2024, the day after Plaintiffs filed this suit. See Request for Judicial Notice [Doc. No. 31]. The court may not, however, consider the proffered evidence without converting the motion to one for summary judgment, see Fed. R. Civ. P. 12(d), and the court declines to do so.

[2] Plaintiffs are not barred by this Order from seeking leave to amend the Complaint if warranted by the facts to add allegations as to a final municipal decisionmaker responsible for the challenged conduct.

the allegations suggests that to be the case here. And Plaintiffs do not allege that similar or related issues occurred at previous marathons. On the contrary, Plaintiffs have organized their cheer zone for at least four years without incident, except at the 2023 Boston Marathon. See Compl. ¶ 20 [Doc. No. 1]. Plaintiffs offer no authority suggesting that an inference is permissible in these circumstances.

Accordingly, the Section 1983 claim is dismissed as against the City.

### 2.    Carmichael

The Newton Defendants separately argue that Carmichael is improperly named as a Defendant because the Complaint alleges no specific facts about him or his involvement in the alleged conduct. Plaintiffs counter that he is properly named because they seek injunctive relief against him in his official capacity under the Ex Parte Young exception to the Eleventh Amendment, which allows federal courts to "enjoin state officials to conform future conduct to the requirements of federal law." Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (citation omitted); see Ex Parte Young, 203 U.S. 123, 159-60 (1908).

Because the court dismisses the Section 1983 claim against the City, there is no reason to enjoin Carmichael in his official capacity as Chief of Police for the Newton Police Department as to that claim. Accordingly, the Section 1983 claim is also dismissed against Carmichael.

### 3.    The BAA

#### a)    The BAA as a State Actor

The court considers the threshold question of whether the BAA, a private party, can be a "state actor" under the facts as alleged, and thereby held liable under 42 U.S.C. § 1983 for violations of Plaintiffs' Equal Protection rights.

8

This is a fact-specific inquiry. <u>Santiago v. Puerto Rico</u>, 655 F.3d 61, 68 (1st Cir. 2011); see <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."). "[T]he challenged conduct [is] at the hub of the analytical wheel. Thus, the focal point is the connection between the State and the challenged conduct, not the broader relationship between the State and the private entity." <u>Perkins v. Londonderry Basketball Club</u>, 196 F.3d 13, 19-20 (1st Cir. 1999). One of the three tests for determining when a private party crosses the line to becoming a state actor is the "nexus/joint action test," also referred to as the "symbiotic relationship test." <u>See</u> <u>Santiago</u>, 655 F.3d at 71 n.6.[3] The symbiotic relationship test inquires into whether "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." <u>Id.</u> at 68 (internal quotation marks and citations omitted).

> To pass this test, a plaintiff must show that the private party's actions are attributable to the state through a symbiotic relationship between the two. . . . The requisite nexus is premised on a showing of mutual interdependence. . . . The 'most salient' factor in this determination 'is the extent to which the private entity is (or is not) independent in the conduct of its day-to-day affairs.' . . . A private party's use of public facilities may weigh in the balance. . . . So, too, may the state's sharing of profits generated from the private party's rights-depriving conduct.

<u>Id.</u> at 71. As to the last factor, "[w]hile the fact of a financial partnership is instructive in the determination of a symbiotic relationship, the lack of that financial characteristic is not

---

[3] Plaintiffs disclaim the other two tests, <u>see</u> Pls.' Opp. at 14 n.10 [Doc. No. 32], so the court does not address them.

necessarily dispositive. [] The test is one of interdependence and joint participation, rather than one of financial enrichment." Rodriguez-Garcia v. Davila, 904 F.2d 90, 98 (1st Cir. 1990).

"This case uniquely mirrors the traditional state-action case," where typically "a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192-193 (1988). Here, the final act alleged by Plaintiffs—selectively receiving treatment by the Newton Police Department—was committed by an indisputable state actor. See id. at 193 (examining whether state actor's conduct, influenced by and in compliance with private association's rules and recommendations, turned that conduct into state action). This does not, as the BAA argues, "get[] the law and logic of Section 1983 exactly backwards." Mem. ISO BAA Mot. to Dismiss ("BAA Mem.") at 8 [Doc. No. 24]; see Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir. 1987) (finding Section 1983 liability for private actor who "did not participate directly in" police arrest of another, but where evidence supported "that he conspired with the police or acted in a way purposefully calculated to bring about the unlawful incarceration"). Nor, as the BAA argues, does this mean that the analysis hinges on whether the BAA is independent in its day-to-day affairs. See Reply ISO BAA Mot. to Dismiss ("BAA Reply") at 2 (emphasizing that Newton does not control BAA's day-to-day affairs) [Doc. No. 41]. Rather, the essential question is whether the Newton Police Department's alleged "decision to [target Plaintiffs] was a collective one, made by [the police] and [the BAA] in concert, rather than solely an official one." Wagenmann, 829 F.2d at 209; cf. Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (no symbiotic relationship

based on "bare allegation" that business and police acted together, with "no evidence" of doing more than summon police).

Taking as true the facts alleged in the Complaint and drawing all reasonable inferences in Plaintiffs' favor, the court finds that Plaintiffs have plausibly alleged a symbiotic relationship between the BAA and the Newton Police Department during the 2023 Boston Marathon. The Complaint alleges that the BAA and Newton Police Department "jointly and actively collaborate before and during the day of the marathon." Compl. ¶ 50 [Doc. No. 1]. It alleges that, "[a]s the law enforcement response [to Plaintiffs' cheer zone] unfolded, NPD officers stated that they were responding to a complaint from the BAA." Id. ¶ 33. Most importantly, it alleges that a guest of Plaintiffs "contacted Suzanna Walmsley, BAA's Director of Community Engagement . . . and expressed concerns about NPD officers surrounding the running crews. Walmsley was asked to call them off." Id. The Complaint does not explicitly state that Walmsley did in fact "call them off," but it alleges an immediate consequence allowing for such an inference: "After a few minutes, NPD officers left the scene briefly"—until, ultimately, a larger group of officers returned to form a human barricade around the course and surround Plaintiffs' cheer zone. Id. ¶ 34. Moreover, the Complaint alleges that "BAA President and CEO Jack Fleming [later] stated, 'I apologized to the police for the position that they were put in, that I put the police in.'" Id. ¶ 42.[4]

---

[4] The parties' briefs include additional facts and quotations from news articles and reports from online websites. See, e.g., BAA Mem. at 4 nn.6-8 [Doc. No. 24]; Pls.' Pls.' Opp. at 15 nn.11-14 [Doc. No. 32]. As this material is not incorporated by reference in the Complaint and the parties have not requested judicial notice, the court disregards this material in deciding the present motions to dismiss.

To be sure, "merely initiating a good-faith request for police protection would not attach liability for the subsequent unconstitutional conduct of arresting officers." Wagenmann, 829 F.2d at 210. Plaintiffs' opposition too strongly characterizes their allegations as demonstrating that the Newton Police Department was "acting on BAA's orders" or on "BAA's insistence and demands." Pls.' Opp. at 15 [Doc. No. 32]. However, the allegations do plausibly rise beyond the good-faith level by suggesting the BAA was ingratiated with the Newton Police Department to the point that it could seemingly direct the Newton Police Department to back off, even if momentarily, and could take responsibility and apologize "for the position . . . [the BAA] put the police in." See Compl. ¶¶ 33, 42 [Doc. No. 1]. The fact that the alleged conduct occurred on public city streets that had been cleared for purposes of the marathon that day gives extra weight to the allegation that the BAA had to "jointly and actively collaborate" with the Newton Police Department before and during the day itself. Id. ¶ 50; see Carmack v. Mass. Bay Transp. Auth., 465 F. Supp. 2d 18, 30 (D. Mass. 2006) (finding symbiotic relationship where plaintiff alleged defendant conducted commuter rail operations on property owned by state agency, and the challenged conduct occurred in a public access area); Citizens To End Animal Suffering And Exploitation, Inc. v. Faneuil Hall Marketplace, Inc., 745 F. Supp. 65, 73-74 (D. Mass. 1990) (finding symbiotic relationship where building was leased from city and challenged conduct occurred in access lanes "dedicated to public uses").

Those circumstances make the events here distinct from the jurisprudence on which the BAA relies, which principally concerned sports organizations and general rules of eligibility to which the state's relationship was more attenuated. See Perkins, 196 F.3d at 23 (town had little role in nonprofit's process of prioritizing which groups had access to city facilities, where those

facilities were primarily used for schools and hosted a vast array of other groups); <u>Ponce v.</u>

<u>Basketball Fed'n of Com. of Puerto Rico</u>, 760 F.2d 375, 381 (1st Cir. 1985) (government had

contractual relationship with league for use of stadiums, but did not review, approve, or have

anything to do with promulgation of league's eligibility rules and requirements); <u>Tarkanian</u>, 488

U.S. at 194-95 (state university committed to adhere to NCAA enforcement procedures, but this

commitment was not meaningfully enforceable and state university at all times "retained the

authority to withdraw from the NCAA and establish its own standards").

The court therefore finds that Plaintiffs have sufficiently alleged the BAA's role as a state

actor for purposes of Section 1983.

### b)    Equal Protection Under 42 U.S.C. § 1983

"An equal protection claim requires 'proof that (1) the person, compared with others

similarly situated, was selectively treated; and (2) that such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Freeman</u>, 714 F.3d at

38 (citation omitted). Although the "formula for determining whether individuals or entities are

'similarly situated' . . . is not always susceptible to precise demarcation," the "test is whether a

prudent person, looking objectively at the incidents, would think them roughly equivalent and

the protagonists similarly situated." <u>Aponte-Ramos v. Álvarez-Rubio</u>, 783 F.3d 905, 909 (1st

Cir. 2015) (internal quotation marks and citation omitted). "In other words, apples should be

compared to apples." <u>Id.</u> (citation omitted). For Section 1983 liability, a plaintiff must also

"show that the defendants' conduct was the cause in fact of the alleged deprivation." <u>Rodriguez-</u>

<u>Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).

### (1)    Comparison With Others Similarly Situated

The parties dispute whether Plaintiffs' allegations fairly compare apples to apples. To start, the court addresses Plaintiffs' comparisons with events in Wellesley. The Complaint alleges that "a Wellesley family hosted a block party for runners, featuring a 10-foot blue and yellow balloon arch placed within the course for runners to pass through. In contrast to Plaintiffs' cheer section, this area, comprising mostly of white spectators, lacked police presence or instructions to stay off the course." Compl. ¶ 29 [Doc. No. 1]. The Complaint also references a tradition in which "hundreds of Wellesley College students [] gather every year at the 'Scream Tunnel' to cheer 'and maybe even snag a kiss from runners'[.]" Id. ¶ 22. Because the balloon arch and Scream Tunnel were in Wellesley[5] and Plaintiffs do not allege that the Newton Police Department had jurisdiction there during the Marathon, the court finds these Wellesley incidents do not offer a fair comparison as to the alleged conduct of the Newton Police Department. Nor can the court reasonably infer that BAA had a symbiotic relationship with the local authorities in Wellesley solely on the allegation that "the BAA and the law enforcement agencies in jurisdictions across the 26.2 miles of the course . . . jointly and actively collaborate before and during the day of the marathon." Id. ¶ 50; cf. id. ¶¶ 33-34 (suggesting BAA's Director of Community Engagement "call[ed] . . . off" Newton police officers). Any non-enforcement of spectators in Wellesley is therefore disregarded for comparator purposes.

_____

[5] The Complaint does not specifically allege where the balloon arch was, but the court infers that it was in Wellesley from the news article cited in the Complaint. See id. ¶ 29 n.12. The Complaint does specify that the Scream Tunnel was in Wellesley. Id. ¶ 1.

That leaves two relevant comparators. First, "a white male spectator offered a doughnut to runners, and then ran alongside the man who finally accepted it. Yet no BAA officials or police officers intervened." Id. ¶ 30.[6] Second, "a white woman and her child at Mile 21 in Newton, who appeared to be loved ones of a runner, cross[ed] the street into the course to hug a participant, without any intervention from BAA officials or NPD officers." Id. ¶ 31.

As for Plaintiffs, their allegations of selective treatment begin with a "spectator of color" in their cheer zone who "joyfully celebrated by launching a confetti cannon as a known runner passed the Mile 21 cheer zone." Id. ¶ 26. In response, a Newton police officer "fisted the front of the spectator's shirt, demanded identification, and threatened an arrest for allegedly running in the course," although the spectator "explained to the officer that he was not obstructing any runners." Id. Although this unnamed spectator is not a plaintiff,[7] his treatment is offered as exemplary because just fifteen minutes later, Newton police officers were "continuing to yell and instruct spectators in TrailblazHers' Mile 21 cheer zone to move back, even though no one was obstructing runners." Id. ¶ 27. These spectator interventions are similar to, if not milder than, the comparator interventions. See Anderson v. Brennan, 219 F. Supp.3d. 252, 258 (D. Mass. 2016) (finding comparators appropriate when "more serious . . . incidents have been dealt with lightly"). The doughnut incident involved a spectator running into the course after a participant whom he appeared not to know, until the participant accepted a doughnut from the spectator. By contrast here, the spectator of color was not a stranger, but launched confetti for a "known

---

[6] The Complaint includes a photo of this alleged incident from a TikTok video. Id. In the absence of allegations suggesting otherwise, the court treats the Complaint as plausibly alleging that this incident took place within the Newton Police Department's jurisdiction.

[7] Plaintiffs' organization "is an all-female run crew." Id. ¶ 9.

runner" without entering the course, and there is no allegation that the known runner did not welcome the "joyful[] . . . launching [of] a confetti cannon." Compl. ¶ 26 [Doc. No. 1]. Moreover, the allegations are clear that spectators in Plaintiffs' cheer zone were not "obstructing runners," id. ¶¶ 26, 27; by contrast, the spectators who ran into the course to hug a participant necessarily obstructed that participant. The Complaint does not allege that anyone other than spectators in Plaintiffs' cheer zone were threatened with arrest, had their shirts fisted, or were yelled at. Thus, the court finds Plaintiffs adequately allege that they received selective treatment as compared with similarly situated individuals.

Defendants point to Plaintiffs' "group of over 100 people gathered together" to differentiate the incidents. Mem. ISO Newton Defs.' Mot. to Dismiss ("Newton Mem.") at 4 [Doc. No. 21]; BAA Reply at 10 [Doc. No. 41]. But the Complaint alleges that the twenty Newton police officers who came to focus on the TrailblazHers group as a whole—forming a human barricade to pen in the cheer zone—flowed from and developed out of the confetti cannon incident with an individual spectator, which continued with yelling at spectators in the group more generally, and finally a regrouping of the twenty police officers to form a human barricade around the whole cheer zone. See Compl. ¶¶ 26, 27, 34 [Doc. No. 1]. Drawing rational inferences in Plaintiffs' favor, as the court must, these are allegations of an increasingly outsized response to individual incidents within Plaintiffs' cheer zone, and so the doughnut runner and the hug are appropriate comparators.

Finally, the BAA cites cases dismissing Equal Protection claims for failing to satisfy the similarly-situated threshold requirement. See BAA Mem. at 14-15 [Doc. No. 24]. Every one of those cases is inapposite because they turned not on the inadequacy of comparators, but on the

16

absence of allegations thereof. <u>See, e.g.</u>, <u>Badio v. G4S Sol. USA</u>, 2021 WL 102656, at *7 (D.

Mass. Jan. 12, 2021) ("Plaintiff does not allege that others similarly situated were treated

differently than he was or provide instances of alleged disparate treatment to support a claim.");

<u>Ayala-Sepulveda v. Municipality of San German</u>, 671 F.3d 24, 32 (1st Cir. 2012) ("Ayala

presents no evidence regarding, for example, instances in which heterosexual employees with

similar rank and qualifications were not transferred.").

The court therefore finds that the Complaint fairly compares apples to apples, and

sufficiently alleges selective treatment as compared with similarly situated spectators.

### (2)    Selective Treatment Based on Race

The BAA argues that "Plaintiffs' photograph of the alleged 'police barricade' at Mile 21

shows officers standing in front of multiple white spectators in the same manner as Black

spectators." BAA Mem. at 15 [Doc. No. 24]. But the presence of some white spectators in

Plaintiffs' cheer zone—which was organized for and comprised mostly of spectators of color, <u>see</u>

Compl. ¶ 23 [Doc. No. 1]—and the incidental enforcement against white spectators in that zone

does nothing to detract from Plaintiffs' claims here. <u>See, e.g.</u>, <u>Frith v. Whole Foods Mkt., Inc.</u>,

38 F.4th 263, 274 (1st Cir. 2022) ("If an employer discriminates both against Black employees

based on their race and against non-Black employees based on their status as non-Black people

associating with Black people [by wearing Black Lives Matter masks], that employer 'doubles

rather than eliminates Title VII liability.'") (citation omitted).

The court finds that Plaintiffs sufficiently allege that their selective treatment was based

on Plaintiffs' race.

**(3)    Cause in Fact**

Finally, the BAA argues that it cannot be the cause in fact of the alleged deprivation

because it cannot be held vicariously responsible for police conduct. See BAA Mem. at 16 [Doc.

No. 24]. For the reasons already discussed above, Plaintiffs have sufficiently alleged that the

BAA was operating in a symbiotic relationship with the Newton Police Department, to the point

that the officers "stated that they were responding to a complaint from the BAA," the BAA's

Director of Community Engagement was able to "call them off" for a brief time, and the BAA

President apologized for the position he put the police in. Compl. ¶¶ 33-34, 42 [Doc. No. 1].

Although the BAA may later discredit these allegations with evidence, they are sufficient at this

stage for Plaintiffs to state a claim for relief.

Accordingly, the BAA's motion to dismiss is denied as to the Section 1983 claim.

**B.    Civil Rights Conspiracy Under 42 U.S.C. § 1985(3)**

To support their civil rights conspiracy claim against all Defendants, Plaintiffs present

essentially the same theory for why the BAA is a "state actor," i.e., the BAA's "intensely close

coordination" with the Newton Police Department and its alleged direction of the Newton police

officers' targeting of Plaintiffs. Pls.' Opp. at 20 [Doc. No. 32]. But pleading a civil conspiracy

under 42 U.S.C. § 1985 is different from pleading a symbiotic relationship for purposes of

establishing a state actor under 42 U.S.C. § 1983. A civil rights conspiracy claim requires four

elements: (1) a conspiracy, (2) "a conspiratorial purpose to deprive the plaintiff of the equal

protection of the laws," (3) "an overt act in furtherance of the conspiracy," and (4) "either injury

to person or property, or a deprivation of a constitutionally protected right." Parker v. Landry,

935 F3d 9, 17-18 (1st Cir. 2019) (citation omitted).

Nowhere do Plaintiffs allege a "conspiratorial purpose to deprive the plaintiff of the equal protection of the laws." Id. at 18. This requirement is not satisfied "simply because [the alleged conspiracy] has an effect upon a protected right. The right['s] . . . impairment must be a conscious objective of the enterprise." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993). Plaintiffs only make one conclusory allegation to this effect: "BAA and NPD targeted Plaintiffs because of their race and conspired to deprive them of their civil rights, including equal protection of the laws." Compl. ¶ 53 [Doc. No. 1]. No alleged facts support this conclusory statement, nor the inference that the BAA and Newton Defendants entered into a tacit agreement to target Plaintiffs for the purpose of impairing their Equal Protection rights.

Accordingly, the motions to dismiss Plaintiffs' civil conspiracy claim as to all Defendants are granted.

### C.    Massachusetts Public Accommodation Law

Plaintiffs' last claim arises under the Massachusetts Public Accommodations Law, which provides: "All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons." M.G.L. c. 272, § 98. Defendants argue that (1) Plaintiffs' claim is barred for failure to first exhaust administrative remedies, and (2) the claim fails because the Boston Marathon is not a place of public accommodation. See Newton Mem. at 15-17 [Doc. No. 21]; BAA Mem. at 18-19 [Doc. No. 24].

The court first dispenses with the exhaustion argument. The BAA relies on a statement in Bush v. Fantasia that "Massachusetts law requires that all of Plaintiffs' state-law discrimination

19

claims be brought before the MCAD [Massachusetts Commission Against Discrimination] before a lawsuit may be filed." 2022 WL 4134501, at *10 (D. Mass. Sep. 12, 2022) (quoting Quarterman v. City of Springfield, 716 F. Supp. 2d 67, 77 (D. Mass. 2009)). Neither Bush nor the cases it collects contend with the Massachusetts Supreme Judicial Court's opinion in Currier v. National Bd. of Med. Examiners, 462 Mass. 1, 4, 965 N.E.2d 829 (2012), which analyzed a claim under the Public Accommodations Law and held that the plaintiff was entitled to summary judgment even though she had not proceeded to the MCAD prior to filing suit. "Currier thus supports the conclusion that a plaintiff is not required to proceed first before the MCAD and exhaust her administrative remedies when alleging discrimination in a place of public accommodation." Peters v. Bos. Properties, Inc., 2021 WL 3493907, at *4 (Mass. Super. June 15, 2021). This is because the exclusivity provision of Chapter 151B, section 9, mandates that a charge of discrimination with the MCAD is the exclusive remedy only "as to the acts declared unlawful by section 4[.]" M.G.L. c. 151B, § 9. Those acts in section 4 are "discrimination by private and public employers against employees or prospective employees[,] by those in the insurance or bonding business, by persons in the mortgage business and persons in the business of selling or renting real estate." CapoDiCasa v. Town of Ware, 2018 WL 3966303, at *3 (D. Mass. Aug. 17, 2018); see also M.G.L. c. 151B, § 4. Such acts are not at issue here. Accordingly, the court finds Plaintiffs were not required to exhaust their public accommodation claim with the MCAD.

As to the claim itself, "because the statute is an antidiscrimination statute, . . . [courts] give it 'a broad, inclusive interpretation' to achieve its remedial goal of eliminating and preventing discrimination." Currier, 462 Mass. at 18 (citation omitted). The statute defines a

place of public accommodation as "any place . . . which is open to and accepts or solicits the patronage of the general public," and includes among its enumerated examples "a boardwalk or other public highway" and "a place of public amusement, recreation, sport, exercise or entertainment." M.G.L. c. 272, § 92A. The Massachusetts Supreme Judicial Court has held that "[t]he plain language of the statute shows that [a parade occurring on public streets] falls within the scope of the public accommodation law." Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos. v. City of Bos., 418 Mass. 238, 247, 636 N.E.2d 1293 (1994), rev'd on other grounds sub nom. Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557 (1995). "Nothing in § 92A or any other statute suggests that a boardwalk or other public highway loses its character as a place of public accommodation, resort, or amusement, which it gains by operation of that statute, merely because a parade is conducted there." Id.

Here, the Marathon takes place on public streets, with the general public present as spectators, Compl. ¶¶ 1, 56 [Doc. No. 1], even if participation in the race itself is "notoriously exclusive and difficult to enter," id. ¶ 17. The Complaint adequately alleges the public nature of the Marathon, as demonstrated by its "tradition" of loud, boisterous spectator crowds and cheer zones like Plaintiffs'. See, e.g., id. ¶¶ 21-22. Like a parade, the Marathon falls within the plain language of the statute, and Defendants have provided no authority suggesting that "a boardwalk or other public highway loses its character as a place of public accommodation, resort, or amusement, which it gains by operation of that statute, merely because a [marathon] is conducted there." Irish-Am. Gay, Lesbian & Bisexual Grp., 418 Mass. at 247.

Therefore, the court finds that Plaintiffs have adequately stated a claim under the Massachusetts Public Accommodations Law. Defendants' motions to dismiss this claim are denied.

### D.    Injunctive Relief

Finally, the BAA contends that Plaintiffs cannot seek prospective injunctive relief because (1) they do not allege a threat of future injury sufficient for standing, and (2) the relief sought is a vague "obey-the-law" directive. BAA Mem. at 19-20 [Doc. No. 24]. The court rejects both arguments.

"An allegation of future injury may suffice [for Article III standing] if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). Plaintiffs allege that they "have established a 'cheer zone' at Mile 21 on the Boston Marathon route in Newton" each year during the Marathon since TrailblazHers was founded in 2020. Compl. ¶¶ 9, 20 [Doc. No. 1]. Plaintiffs also allege participating in ten meetings with the BAA after the 2023 Boston Marathon to ensure "additional safety measures for BIPOC participants and spectators at future marathons," but reaching no resolution or seeing "any meaningful reforms to prevent racial profiling and harassment from happening again." Id. ¶ 41-42. Moreover, "Plaintiffs plan to continue setting up a cheer zone at future marathons, as they have traditionally done, but fear that doing so will cause Defendants to racially profile them and discriminate against them again." Id. ¶ 43. The BAA's assertions to the contrary, BAA Mem. at 20 [Doc. No. 24], are irrelevant because they raise factual disputes not appropriate for the court to consider at the pleading stage, and "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of

repentance and reform, especially when abandonment seems timed to anticipate suit[.]" E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 745 (1st Cir. 1996) (citation omitted). Taking the allegations in the Complaint as true, Plaintiffs have sufficiently alleged a risk of future injury.

As to the particularity of the injunctive relief sought, the BAA's challenge is premature at this stage. See LaBonte v. Riverside Park Enterprises, Inc., 2022 WL 17253663, at *5 (D. Mass. Nov. 28, 2022) ("A Rule 12(b)(6) analysis tests the plausibility of claims, and remedies are not claims.") (citation omitted). In any event, an "an obey-the-law injunction" is not per se impermissible or beyond what Rule 65(d) allows. See, e.g., SEC v. McLellan, 737 F. Supp. 3d 95, 109-10 (D. Mass. 2024).

Accordingly, the court finds that Plaintiffs' allegations suffice at this stage to include a prayer for injunctive relief.

## IV.    Conclusion

For the foregoing reasons, the Newton Defendants' Motion to Dismiss [Doc. No. 20] is GRANTED as to the Equal Protection and Civil Conspiracy claims against them; their motion is DENIED as to the Massachusetts Public Accommodations Law claim. The BAA's Motion to Dismiss [Doc. No. 23] is GRANTED as to the Civil Conspiracy claim and DENIED in all other respects. Plaintiffs' Request for Judicial Notice [Doc. No. 31] is DENIED.

IT IS SO ORDERED.

March 20, 2025                                    /s/ Indira Talwani
                                                 United States District Judge